EVANS ET VIR *v.* HOT SHOPPES, INC.

[No. 2, September Term, 1960.]

*Decided October 14, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Thomas S. Jackson,* with whom were *Jackson, Gray &
Jackson* on the brief, for appellants.

*John M. McInerney,* with whom were *McInerney & Latham*
on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

When the trial court granted the defendant's motion for
a directed verdict on the ground that the plaintiffs had failed

to show any negligence on the part of the defendant restaurant operator, the plaintiffs appealed.

The plaintiffs-appellants are husband and wife; the husband sued for loss of consortium, medical and hospital expenses of the wife paid by him; the wife for damages for personal injuries received by her, allegedly resulting from the negligence of the defendant in maintaining a paper and magazine rack in its restaurant, located at Langley Park in Prince George's County.

The lunch-room is entered by a revolving door that opens into a lobby 10 feet wide. Directly in front of the revolving door, at a distance of some 12 feet, is a three-fronted counter about 4 feet high, roughly resembling in shape the lower part of a capital J, with the edges of the counter forming straight lines instead of a curve. The central portion of the counter is utilized by the cashier; the lower section (closest to the entrance) displays cigars for sale, and the upper section trinkets. The magazine rack faced the revolving door and was located in front of the cigar counter, at the point where this section of the counter joined the central or cashier's portion of the three-faced counter.

To the left as one enters the lobby from the revolving door, there is a passageway some 7½ feet wide that leads to a counter-service department. The customers who desire table service proceed directly across the lobby into an aisle about 7½ feet wide (in doing so they pass by or alongside the cashier's section of the counter as well as the section that displays trinkets), and then turn right into the table-service department.

The floor of the restaurant was of flooring tile, a part of which was black and a part white. The counter had a black border some 5 or 6 inches wide.

The wood of the magazine and paper rack was of a grain and color which matched the color of the counter already described. All of the exact dimensions of the rack were not given, but some of them were; and there were three large pictures of the same introduced as exhibits. It was nearly the same height as the counter, and was about 12 to 15 inches wide. It had two shelves: one about 15 inches from the top

for the purpose of displaying magazines (particularly Saturday Evening Posts in an upright position), and one about 5 inches from the floor for papers. The upper shelf was about 10 inches wide and the lower one, which formed a part of the base of the rack, approximately 15 inches in width. The sides of the rack came down to the first shelf in curves, then curved inward toward the rear and then curved out to make an attractive receptacle for the magazines and papers. The side of the rack, cut in a scalloped design as just mentioned, would face anyone standing at the cashier's counter who chanced to look to the left. The bottom of the rack had a black border of approximately the same width as that of the counter.

The appellant, Marion H. Evans, a housewife approximately 50 years of age, testified that in October, 1958, she, her elderly mother, and a woman friend went to the restaurant to have dinner; it was early in the evening, still light, and the restaurant was well-lighted; they had been there before, and, on the instant occasion, entered by way of the revolving door at the main entrance and proceeded directly ahead through the lobby, passed alongside the cashier's counter and turned to the right and entered the dining room, where they had dinner which consumed about 45 minutes.

After dinner, the appellant, her friend and her mother returned to the front or lobby area. The friend stopped to pay the check, and, while her friend was thus engaged, the appellant's attention was attracted to some cute little animal toys displayed in a rack located to the left (upon entering) of the revolving door. She was amused by, and interested in, the toys, and wanted her friend to see them. She recrossed the lobby to a position to the left of her friend, who was standing at the cashier's section of the counter. She told her friend to come and see the toys after she had paid the check.

At this time, the appellant was facing the cashier's counter with the magazine rack just to her left. She turned to her left intending to return to the toy rack. As she did so her right ankle struck the rack, she tripped off balance, fell, and was injured.

Mrs. Evans also testified that, although she had been in the restaurant many times before (and her testimony shows

that on this occasion she had passed by or alongside the rack at least three times) she never noticed the rack before she struck her ankle against it.

The appellants contend that in permitting the use, in an area designed to divert a customer's attention by the display of merchandise, of a rack with a protruding bottom shelf, so turned that the protruding shelf extended into an oft-frequented aisle, and so colored that it blended with the counter and the floor, the defendant was negligent. The appellee says the testimony and exhibits reveal no more than an ordinary piece of business furniture, customarily used by operators of restaurants for display of magazines and newspapers, which was easily discernible in a well-lighted position.

The applicable law seems to be well settled in Maryland, as well as elsewhere. Being a business invitee, Mrs. Evans was owed the duty of ordinary care and caution by the restaurateur to see that that portion of its premises used by its patrons was in such a condition as not to imperil her, so long as she, herself, exercised ordinary care. *Dickey v. Hochschild, Kohn & Co.,* 157 Md. 448, 450, 146 A. 282; *Morrison v. Suburban Trust Co.,* 213 Md. 64, 66, 130 A. 2d 915. See also Harper and James, *The Law of Torts* ¶ 27.12; 65 C. J. S., *Negligence,* ¶ 45; 38 Am. Jur., *Negligence,* ¶ 131; *Prosser, Torts* (2nd Ed.), p. 459; *Ludloff v. Hanson,* 220 Md. 218, 151 A. 2d 753. As early as the case of *Chalmers v. Great Atlantic & Pacific Tea Co.,* 172 Md. 552, 556, 192 A. 419, this Court quoted with approval the general rule embodied in Section 343 of the Restatement, *Torts,* which states, in part, that a possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care should discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and (b) has no reason to believe that they will discover the condition or realize the risk involved therein. Judge Offutt, who wrote the opinion, was careful to point out the difference in the cases where the injuries complained of were caused by some abnormal or unusual condition of the premises which created a danger which the invitee had no

reason to anticipate, and those where the injuries were caused by conditions that were commonly and customarily incident to the business carried on by the inviter, and, therefore, to be expected by the invitee and avoided by him by the exercise of the degree of vigilance which the conditions required. The negligence of the storekeeper in that case was held to be for the jury because the store owner had placed a carton in the only aisle provided from the meat counter to the grocery counter or the door, and the invitee, in turning from the meat counter, had room for only one step before falling over the carton. It was held that patrons in a grocery store must be expected by the proprietor to look at the goods displayed for sale, and not at the floor, and were entitled to rely upon the presumption that narrow passageways provided for use are unobstructed.

Since the *Chalmers* case, this Court has several times reaffirmed the general principle laid down in said Section 343 of the Restatement. In two cases, *Glaze v. Benson,* 205 Md. 26, 106 A. 2d 124, and *Morrison v. Suburban Trust Co., supra,* Judge Hammond spoke for the Court. In *Glaze,* it was held that the operator of a place of amusement, to which the public was invited, discharged his obligation if he maintained his facilities in a reasonably safe condition for the purposes for which they were apparently designed and for which they were adapted; and, as the plaintiff had failed (applying the tests of Section 343) to show a realization on the part of the defendant of any condition that constituted an unreasonable risk to the patron, and the absence of reason for the defendant to believe "that the condition [would not] be discovered by the patron or the risk realized by him," a directed verdict in favor of the defendant was proper. In the *Morrison* case, *supra,* we again pointed out the difference between injuries sustained by a business visitor, which are caused by unusual or abnormal conditions of the business premises and which the visitor has no reason to anticipate and guard against, and those caused by ordinary, usual or customary conditions incident to the business conducted. We there held that a commercial garage owner was not negligent in the conduct of his garage in failing to see that the floor area of the garage,

used in the ordinary operation of the business, was free of jack handles; consequently, a plaintiff, who had fallen over a jack handle, was not entitled to recover, and the trial court had properly directed a verdict in favor of the defendant.

We shall now apply the tests as laid down by Section 343 and the Maryland cases to the facts immediately before us. We think it apparent that the injuries complained of were not the result of any latent, concealed or extraordinary condition of the appellee's premises. The rack was purposely located in a well-illumined, conspicuous position, so as to attract attention and assist in the sale of the merchandise located thereon. It is a matter of common knowledge that many restaurants, drugstores, barbershops, and similar establishments sell newspapers, magazines, and other articles of merchandise. And the law recognizes that, of necessity, a seller of merchandise must utilize counters, cases, racks, and other equipment in which to display his wares, and, if such equipment be reasonably designed and properly arranged, customers reasonably can be expected to avoid injury therefrom when it is in full view. 38 Am. Jur., *Negligence,* ¶ 136. We, therefore, conclude that the injuries received by Mrs. Evans were the result of a condition of the appellee's premises that was commonly incident to its business.

We also think that the appellants failed to establish that the condition complained of involved any unreasonable risk to Mrs. Evans and other customers; or that the appellee had no reason to believe that Mrs. Evans would discover the condition or realize the risk involved. The magazine and/or newspaper rack has become commonplace equipment in many business establishments today. The one involved in this case was of a substantial nature, some 4 feet high and about 15 inches square at the base. As stated before, it was in a well-lighted, easily-to-be-observed location. We do not believe that the fact that the base of the rack had a border of the same color and approximate width as the base of the counter or the fact that the base of the rack was a few inches wider than its upper shelf created any unusual or unreasonable risk or danger to the customer. A merchant is entitled to use his discretion in the selection of the equipment to display his goods,

so long as it is reasonably designed and properly arranged.· Mrs. Evans did not testify that anything distracted her attention just prior to her hitting her ankle on the rack. She stated she had just spoken to her friend, telling the friend to come to the toy animal case when the check was paid. Without unduly prolonging this discussion, we think the rack was an ordinary piece of business furniture, reasonably designed and located in a prominent, obvious position, and the appellee reasonably could have believed that Mrs. Evans would observe the same and avoid injury to herself by striking her ankle on its side.

The case at bar is easily distinguished, on the facts, from such cases as *Dowling v. MacLean Drug Co.,* 248 Ill. App. 270; *Thompson v. F. W. Woolworth Co.,* 192 N. E. 893 (Ind.), *Freeman v. Myron Green Cafeterias Company,* 317 S. W. 2d 303 (Mo.), *Embry v. Sears, Roebuck & Co.,* 144 A. 2d 891, (Mun. Ct. of App. D. C.), and *Baskin v. Montgomery Ward & Co.,* 104 F. 2d 531 (C. A. 4th), all cited by the appellants. They, in fact, point up the difference, as it was shown in *Chalmers* and *Morrison,* both *supra,* between the abnormal and unusual condition of premises and those commonly incident to the business carried on by the inviter. The instant case is not one of an obstruction or projection in an aisle. The magazine rack faced out into the lobby toward the entrance door, and the nearest object to it permitted a passageway 7½ feet wide for those customers who desired counter service at the left of the entrance.

In *Dowling,* the plaintiff fell over the base of a scale or weighing machine that extended about 2 feet into an otherwise unobstructed narrow aisle. In the *Embry* case, there was no question of an obstruction or projection in an aisle. The plaintiff fell over a platform, which formed the corner of a main and an intersecting aisle, about 20 inches wide. The platform was approximately four feet square and five inches high. Its sides were not flush with the edge of the top surface, but were indented some three or four inches, leaving a projecting ledge around the platform. The plaintiff's claim was that the platform, with its projecting corner was so close to the cashier's booth that it constituted a hazard to a cus-

tomer approaching the booth. In *Baskin,* the question was whether the counters in the defendant's store were "negligently arranged." In *Freeman,* the base of a clothes tree over which the plaintiff tripped and fell was of an unusual and peculiar design; and in the *Thompson* case, the base of a weighing scale, about 14 inches wide, about 18 inches long and about five inches high obstructed a passageway near the entrance of the defendant's store. In these cases, the question of the defendants' negligence was held to have been properly submitted to the juries.

We hold that the plaintiffs failed to establish primary negligence on the part of the appellee; consequently, its motion for a directed verdict was properly granted.

*Judgment affirmed, with costs.*