# CATHERINE L. LINK *v.* HUTZLER BROS. COMPANY

[No. 685, September Term, 1974.]

*Decided April 8, 1975.*

The cause was argued before GILBERT and MASON, JJ., and J. DUDLEY DIGGES, Associated Judge of the Court of Appeals of Maryland, specially assigned.

*John J. Hirsch* for appellant.

*Benjamin R. Goertemiller* and *J. Snowden Stanley, Jr.,* with whom were *Semmes, Bowen & Semmes* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

Catherine L. Link, appellant, was severely injured when she fell in the Towson, Maryland, department store of the appellee, Hutzler Bros. Company. As a direct result of the fall the appellant sustained a fractured hip bone which was surgically pinned, and the bone was later removed. Mrs. Link filed suit against Hutzler's in the Superior Court of Baltimore City. There a jury was unable to agree, and the trial court subsequently entered a judgment n.o.v. in favor of the Hutzler Bros. Company. *See* Md. Rule 563. Aggrieved by the action of the trial judge, Mrs. Link has appealed to this Court.

The record reveals that Mrs. Link testified that on the morning of April 11, 1970 she had gone to Towson with her daughter, son-in-law and two grandchildren in order to shop at the appellee's store. Mrs. Link observed the "shiny" condition of the vinyl floor covering. She said that she stepped onto an area that appeared to be more shiny than the rest of the floor, when her left foot suddenly slipped out from under her. As she was spun around, so as to face the direction from which she had been traveling, she exclaimed to her daughter that she, Mrs. Link, was falling. Mrs. Link landed on her buttocks with a jolt, and the pain resulting

from the fall was so excruciating that she "passed out." The appellant further testified that her coat flew out so that no part of it was under her when she landed on the floor. Her heel had plowed a furrow through a "swishy" substance like "lard" or "wax", that had "crusted" on the surface of the area in which she fell. The appellant's daughter, Mrs. Dorothy Warner, testified that she had observed the waxy substance and, further, that she noted, after the appellant had been removed to the hospital, that the same matter was on the shoe of her mother. The daughter stated, "I knew it was wax."

The store nurse, while acknowledging that Mrs. Link had said she had slipped on wax, deposed that there was no wax on the floor. Similarly, the porter whose job it was to care for and maintain the third floor, where the accident happened, disclaimed the presence of wax on the floor. The porter said that the floors were "stripped" just after Christmas, 1969, and that two coats of wax were then applied. After that, a polymer floor finishing product known as "Buffable Supertred" was employed when needed. The product is sprayed on the floor, after being diluted with water, by the same type of sprayer "used for windows." When the mist dries, through evaporation, the floor is then dry-mopped to a sheen. The porter told the jury that he had not placed the "Buffable Supertred" upon the floor for at least three weeks preceding the fall, and he denied the use of wax at any time after its application in December, 1969.

An expert witness produced on behalf of the appellee testified that he was employed by the S.C. Johnson and Son Company, the manufacturer of the "Buffable Supertred", and that the product was developed by that company within the division that he supervised. The expert stated that "Supertred" consists of only 14% solids and the balance is water, that it evaporates much like lacquer, that it does not crust, and that there is "no skinning." [1] The expert further

---

1. We glean from the record that "skinning" means a hardening or forming of a skin-like layer on the surface while fluid remains below the surface.

said that in order for "Supertred" to dry to a thickness of $1/4$ inch, an original puddle of a depth of $1^3/4$ inches would be required, thus clearly indicating that $1^1/2$ inches of the product would evaporate. "Supertred" was characterized, by the expert, as "a liquid plastic emulsion" with wax-like properties and an excellent rating with respect to slipping resistance.

The taking of testimony terminated on a Friday. The case was to go to the jury the following Monday. Prior to the submission to the jury of the factual dispute, however, the appellant's counsel issued a *subpoena duces tecum* in which he sought to compel the appellee to produce records of all accidents for the year 1970 in Hutzler's Towson store. The trial judge noted that the testimony concerning accident reports had been given by the nurse on the preceding Thursday. The expert's testimony concerning the slip resistence of "Supertred" was on Friday afternoon, but that the request for the *subpoena duces tecum* did not come until Monday morning. Our perusal of the record fails to reveal the actual *subpoena duces tecum*, and we are, therefore, without knowledge of its actual content. The trial judge, further, observed that the appellant did not avail herself of discovery, and that the information sought to be examined as a result of the *subpoena duces tecum* might have been obtainable through interrogatories or depositions. The record of the trial does not disclose a proffer by appellant as to what the sought accident records might contain. Lacking a proper proffer, the trial judge was placed in a position of having to determine whether to continue the case while appellant, who, as we have stated, did not avail herself of discovery proceedings, conducted a last minute exploration into the unknown. Not having the proposed *subpoena duces tecum* to review, and being without a proffer that the accident records would show similar falls under like circumstances, we are unable to say that the accident report records would or would not have been admissible evidence. *Fowler v. Benton,* 229 Md. 571, 185 A. 2d 344 (1962); *Leitch v. Anne Arundel County,* 248 Md. 611, 237 A. 2d 748 (1968). In any event we see no abuse of discretion by the trial judge in

declining, under the circumstances, to continue the trial while appellant availed herself of such belated discovery.

Appellant argues that the trial court should not have granted the appellee's motion for a judgment *non obstante veredicto*. The trial judge, in a "Memorandum", made clear that, notwithstanding "that the evidence and reasonable inferences to be taken from that evidence must be reviewed in the light most favorable to the [appellant]", the evidence in the case "could not lead a fair minded and reasonable jury to conclude that the [appellee] was negligent." We, however, have a different view.

A customer of a department store is classified by the law as an invitee. *Dickey v. Hochschild, Kohn & Co.*, 157 Md. 448, 146 A. 282 (1929). *See also* F. Harper & F. James, *The Law of Torts* § 27.12 (1956). A landowner or occupier owes to invitees a duty of reasonable care to see that the place is safe, but, he is not an insurer of the invitees' safety. *Honolulu Ltd. v. Cain*, 244 Md. 590, 224 A. 2d 433 (1966). The Court of Appeals has adopted the view of the Restatement (Second) of Torts § 343 [2] (1965) which provides:

> "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger."

*Accord, Mondawmin Corporation v. Kres*, 258 Md. 307, 266

---

2. Restatement (Second) of Torts § 343, Comment *a*, states that § 343 should be read together with § 343 A, which limits the liability imposed by § 343. Section 343 A involves known or obvious dangers on the premises, and is, therefore, inapplicable to the dangerous condition existent in the instant case.

A. 2d 8 (1970); *Honolulu Ltd. v. Cain, supra; Evans v. Hot Shoppes, Inc.*, 223 Md. 235, 164 A. 2d 273 (1960); *Glaze v. Benson*, 205 Md. 26, 106 A. 2d 124 (1954); *Yaniger v. Calvert Building & Con. Co.*, 183 Md. 285, 37 A. 2d 263 (1944).

An analysis of the slip-and-fall cases in Maryland reveals a preference for the flexibility of a case-by-case approach rather than the rigidity of a general rule.[3] In *Isaac Benesch & Sons v. Ferkler*, 153 Md. 680, 139 A. 557 (1927), evidence that the plaintiff slipped and fell in the defendant's store because defendant failed to allow sufficient time for the recently oiled floor to dry, was sufficient to sustain the jury's finding of negligence. In *Moore v. American Stores Co.*, 169 Md. 541, 182 A. 436 (1936), the Court of Appeals, in a case where an invitee slipped on defendant's "greasy" floor, held the defendant liable.

The Court of Appeals in *O'Neill & Company v. Crummitt*, 172 Md. 53, 190 A. 763 (1937) considered a case wherein Hazel Irene Crummitt had fallen on the O'Neill's department store floor. Mrs. Crummitt testified that she was a customer of O'Neill's, and that she was injured when she stepped from an elevator. She said that the elevator had not been stopped at floor level. When she stepped down onto the linoleum covered floor, she slipped upon a "dirty, greasy substance" and fell, landing in the substance. O'Neill adduced the testimony of "several employees." Each had

---

3. For discussions of slip-and-fall cases in other states *see* Comment, *Premises Liability — The Texas Rule of Liability of Owners and Occupiers of Land for Injuries Sustained by Business Invitees on the Premises — Revisited and Reconsidered*, 5 St. Mary's L.J. 800 (1974); Comment, *Land Occupiers Liability to Business Invitees for Slip and Fall Injuries: Recent Developments in Iowa Law*, 54 Iowa L.J. 659 (1969); Note, *Supermarket Liability: Problems in Proving the Slip-and-Fall Case in Florida*, 18 U. Fla. L. Rev. 440 (1965).

The Florida writer indicates that the three bases for liability in slip-and-fall cases are:

"(1) that the owner or his employees or agents *created* the dangerous condition, or

(2) that the owner or his employees or agents had *actual notice* of the dangerous condition and sufficient time in which to remedy it, or

(3) that the condition existed long enough to have been discovered and remedied *(constructive notice)*." 18 U.Fla.L.Rev. 440, 441 (1965).

viewed the linoleum and each testified that "no such substance was upon it, and that it was in its usual condition. . . ." The Court held that the weight and credibility of the conflicting testimony was for the jury.

The Court held, however, in *Montgomery Ward & Co. v. Hairston,* 196 Md. 595, 78 A. 2d 190 (1951), in an action by a customer of Ward's to recover for injuries sustained when plaintiff slipped and fell over foreign substances situate on steps of the store, that where the evidence failed to show defendant's employees caused the substance to be placed there, or that the presence of such substance was known to defendant or its employees, or that such substance was allowed to remain on the steps for an appreciable length of time, the defendant could not be liable.

A plaintiff was not allowed to recover from a department store which she entered almost immediately after it opened for business on a rainy day. The plaintiff sustained injuries from falling down several steps. The basis of her suit was that she saw, after she had fallen, water on the steps. *Rawls v. Hochschild, Kohn & Co.,* 207 Md. 113, 113 A. 2d 405, 62 A.L.R.2d 124 (1955).

In *Casey v. Roman Catholic Arch.,* 217 Md. 595, 143 A. 2d 627 (1958), the plaintiff slipped and fell on the slippery, newly waxed floor of the defendant church. The Court of Appeals, citing *Isaac Benesch & Sons v. Ferkler, supra,* declared that the trial court correctly submitted the case to the jury, since it could not be said "that there was *no* evidence of negligence."

Later in *Moulden v. Greenbelt,* 239 Md. 229, 210 A. 2d 724 (1965), the Court had before it a case wherein Moulden claimed injury resulting from a fall occasioned by slipping on a "green bean" that was on the floor. The Court said at 231-32:

> "It is established law in this State that a proprietor of a store owes a duty to his customers to exercise ordinary care to keep the premises in a reasonably safe condition, and he will be held liable for injuries sustained by a customer in consequence

of his failure to do so. *Nalee, Inc. v. Jacobs,* 228 Md. 525, 180 A. 2d 677 [(1962)]; *Evans v. Hot Shoppes, Inc.,* 223 Md. 235, 164 A. 2d 273 [(1960)]. However, the proprietor of a store is not an insurer of the safety of his customers while they are on his premises. . . . To recover in an action for damages, the plaintiff must show that the defendant was guilty of negligence which produced the particular injury alleged. . . . The burden is upon the customer to show that the proprietor created the dangerous condition or had actual or constructive knowledge of its existence. *Lexington Market v. Zappala,* 233 Md. 444, 197 A. 2d 147 [(1964)]; *Montgomery Ward & Co. v. Hairston,* 196 Md. 595, 78 A. 2d 190 [(1951)]."

The Court then quoted with approval *Orum v. Safeway Stores,* 138 A. 2d 665 (D.C. Ct. Mun. App. 1958), wherein it was held that there was no evidence showing how long a bean had been on the store floor, nor that any employee of the store had seen it or should have seen it in time to remove it or warn the customer.

In *Moulden, Zappala* and *Hairston,* all *supra,* the Court was concerned with the presence of admittedly foreign matter on the floor. *Moulden* dealt with a "green bean" that could have been dropped by another customer; *Zappala* an oil slick that was not there when the injured party parked her car in the parking garage, but was present when she returned; and *Hairston* with oil on the floor in the dry goods and clothing department. All three cases turned on lack of notice to the store employees. The instant case, however, differs markedly from the foreign object, notice type of cases. As was stated in Annot., "Liability of proprietor of store, office, or similar business premises for fall on floor made slippery by waxing or oiling", 63 A.L.R.2d 591, 620 (1959):

"The notice issue is somewhat less frequently litigated in cases involving injury from falls on waxed, oiled or similarly treated floors, than in

cases involving injury from falls due to other floor conditions. Normally, it is the proprietor of the business operated on the premises who is responsible for such treatment of the floors therein, and some courts have taken the view that it is necessarily true that he has knowledge of their condition."

In the case now before us the trial judge concluded that because the "mound" on which the appellant slipped was translucent and could only be seen by a hands and knees inspection, it would be "totally unreasonable" to hold the appellee responsible. Appellant's testimony, however, if believed, supports a rational inference that appellee or its employees negligently applied the translucent substance to the floor. The jury could find from the evidence that appellee actually created the dangerous condition as a result of its negligent application of the floor surfacing material. "[T]he fact that a condition of a floor was made dangerous by the act of an employee without the knowledge of the owner of the premises . . . does not relieve the storekeeper of liability if such waxing or oiling was done in a negligent manner." 62 Am. Jur. 2d *Premises Liability* § 222 (1972).

The testimony of Mrs. Link and her daughter is that Mrs. Link slipped on what looked like a mound of wax. The Hutzler floor was admittedly waxed approximately four months before the accident, sprayed with "Supertred" three weeks before, and buffed the preceeding day. We think the testimony of the appellant and her daughter sufficient to have taken the case to the jury. Once there, the jury could have disbelieved the nurse, the porter and the expert, and believed the appellant and her daughter, or *vice versa*. The porter's statement concerning his waxing, application of "Supertred" and his buffing of the floor was, like the testimony of Mrs. Link and Mrs. Warner, a question of credibility.[4] The fact that the expert testified that his

---

4. *Compare* Domain v. Friendly Ice Cream Corp., 343 Mass. 770, 178 N.E.2d 27 (1961) (recovery barred where plaintiff testified that she fell when her heel hit "something slippery" which she thought was wax,

product had a high rating for being skid-free does not indicate that the accident could not have happened in the manner described by appellant and her daughter. The expert's testimony, as we see it, that "Supertred" dries without a crust or skin, merely contradicts the evidence of the appellant and her daughter, it does not destroy it. Direct evidence in conflict with an inference properly drawable from other evidence, does not eradicate the inference. The matter becomes a question of what weight the trier of fact will attribute to each.

Wax is no stranger to linoleum or tile. It is, generally speaking, applied to floors for protective as well as for aesthetic purposes. The case of *Miller v. Payless Drug Stores of Washington, Inc.*, 379 P.2d 932 (Wash. 1963) is apposite. In *Miller* the plaintiff, walking down the aisle of the defendant's drugstore, slipped and fell, leaving a mark on the floor some fifteen inches long and as wide as a finger. The plaintiff opined that there was an excess of wax on the floor, but defendant countered by showing that its floors were not covered with wax, but by a polyethylene floor surfacing product. The Washington Court, finding the evidence sufficient to reach the jury, rejected this nicety of distinction, declaring:

> "There is no magic in the use of the word 'wax' in a case of this type. It is a generic term employed by all, and in ordinary usage describes the act of applying a temporary surfacing material for the care and maintenance of floors. Used as a noun, it generally describes the substance or compound so applied to the floor surface. Whether or not such a compound contains any of the substances known to the chemists, physicist or biologists as a wax, we think would be immaterial. We are doubtful if many housewives, or department store managers

---

but no evidence was found at the place of the fall of any accumulation of a substance chargeable to the defendant's negligence) *with* Tua v. Modern Homes, Inc., 64 N. J. Super. 211, 165 A. 2d 790 (1960), *aff'd* 33 N. J. 476, 165 A. 2d 798 (1960), (plaintiff fell on spot covered with waxy substance which had to be scrubbed from her shoes).

for that matter, know that when the word 'wax' is employed in general usage, its restricted meaning describes any one of a number of substances of plant or animal origin containing esters, frequently fatty acids and higher hydrocarbons and distinguished from fats as containing esters of higher monohydroxy alcohols instead of esters of glycerol.

It is well known that the word 'wax' is frequently employed as a verb by housewives to describe their actions in applying a floor surfacing compound to the floors of their homes and as a noun to describe the compound."

The appellee in the instant case also argued that the testimony of the appellant and her daughter was inconsistent, pointing to alleged discrepancies among the answers to the written interrogatories, the depositions and the in-court testimony. Such discrepancies, however, are matters for the jury to assess in attaching credibility, *vel. non.* Neither this Court nor the trial court enters into the weighing of evidence or assessing credibility, absent a showing that the testimony of a witness is so self-contradictory, inconclusive or uncertain as to lack probative force. *Balto. Tr. Co. v. Presberry,* 233 Md. 303, 196 A. 2d 717 (1964); *Kaufman v. Baltimore Transit Co.,* 197 Md. 141, 78 A. 2d 464 (1951); *Slacum v. Jolley,* 153 Md. 343, 138 A. 244 (1927). *See also Kucharczyk v. State,* 235 Md. 334, 201 A. 2d 683 (1964); *Grady v. State,* 24 Md. App. 85, 329 A. 2d 726 (1974); *Bailey v. State,* 16 Md. App. 83, 294 A. 2d 123 (1972). The discrepancies to which appellee alludes are not of such a nature as to require the invocation of *Balto. Tr. Co. v. Presberry, supra,* and its progeny. The Court of Appeals has held that where there is a conflict between a witness's pre-trial testimony and the in-court testimony, the matter is for the jury to resolve. *Campbell v. State,* 203 Md. 338, 100 A. 2d 798 (1953).

Having determined that the evidence adduced by the

appellent was legally sufficient to carry the case to the jury, it follows that the trial judge erred in granting the appellee's motion n.o.v.

> *Judgment reversed and case remanded for a new trial.*
> *Costs to be paid by the appellee.*