## DOROTHY K. KEENE ET VIR *v.* ARLAN'S DEPARTMENT STORE OF BALTIMORE, INC.

[No. 547, September Term, 1976.]

*Decided March 11, 1977.*

---

The cause was argued before LOWE, MELVIN and LISS, JJ.

*John J. Hirsch,* with whom was *Henry J. Frankel* on the brief, for appellants.

*Herbert Burgunder, Jr.,* with whom was *Emanuel H. Horn* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

"Plus ça change, plus la même chose" [1] — the more things change, tne more they remain the same. We observe again here the proof of that aphorism in one of the latest of the many classic department store "fall down" cases which have found their way into the courts.

Dorothy Keene and her husband, Leonard, appellants, urge that Judge J. Harold Grady, sitting in the Superior Court of Baltimore City, erred when at the conclusion of the appellants' case-in-chief he granted a motion for a directed verdict in favor of the appellee, Arlan's Department Store of Baltimore, Inc. We agree with appellants and shall reverse.

As adduced from the testimony offered at the trial, on July 17, 1971, the Keenes entered the department store owned and operated by the appellee in Baltimore City, selected for purchase a Coleman stove, and Leonard Keene got into the second check-out line while Mrs. Keene continued to browse around the store. Some fifteen minutes later, during which time her husband had been moving forward in the check-out line, Mrs. Keene decided to join him and started to walk in his direction. Suddenly, her feet slipped out from under her and she "was sitting on [her] bottom on the floor." She testified that an unidentified man in the first check-out line attempted to help her up and when

---

1. Alphonse Karr, French novelist and satirist (1808-1890), Les Guepes [Janvier, 1849].

she had almost gotten to her feet she slipped again, falling in such a way as to be facing the front of the store (as well as the cashier in the first line); that as she was regaining her feet for the second time she heard the cashier in the first check-out line blurt out, "I told them if this wasn't cleaned up, someone's going to fall." Over objection and in response to the question, "Did you see her say that?", Mrs. Keene answered, "Yes, I did." When asked to describe "the method in which [the cashier] said it," she answered, "Her nature was — seemed to be irritated, like she was upset. . . . a loud tone of voice, loud, irritated tone, excited." Mrs. Keene said that her shoes and clothes were covered with a "clear, sleek solution," which she had neither smelled nor seen on the floor before falling.

Mr. Keene corroborated his wife's description of the events including the statement allegedly made by the cashier. He testified that he wiped a very slippery, slimy substance from his wife's shoes; that it was also on his wife's clothing and stockings; that he noticed a puddle on the floor where she had fallen and that there were slip marks on the floor in the puddle. A display of boxes containing a product known as Lemon-Up Shampoo was in the area adjoining the alleged puddle. There was no direct evidence establishing with certainty that the foreign material on the floor was shampoo; nor was there any evidence as to how the substance got on the floor or how long it had been there. Mr. Keene testified that during the fifteen minutes he was standing in the check-out line he had continuously observed the cashier in the first line and that during that entire time she spoke to no one other than those customers going through her check-out line.

There was testimony concerning the injuries and damages sustained by appellants, but that testimony — not being an issue in the controversy now before us — need not be recited. At the conclusion of the appellants' case, the appellee moved for a directed verdict on five alternative grounds:

1) That there was no evidence offered in the case

legally sufficient to entitle the plaintiffs to recover against the defendants;

2) That there was no evidence of primary negligence on the part of the defendant;

3) That the proximate cause of the accident was the negligence of the plaintiff, Mrs. Keene;

4) That Mrs. Keene was guilty of contributory negligence as a matter of law; and

5) That there was no evidence that the defendant had sufficient notice of the alleged condition of the floor in sufficient time to have corrected it.

Judge Grady in an oral opinion granted the motion on the ground that the evidence was too vague and non-specific to show actual notice on the part of any employee and that the jury would be required to speculate as to the negligence of the defendant if it should find a verdict against it. The jury was discharged, and a judgment in favor of the appellee was entered. It is from that judgment that this appeal was filed — on the ground that there was in fact sufficient evidence for the jury to determine the question of primary negligence on the part of the appellee.

The Court of Appeals of Maryland in *Baulsir v. Sugar*, 266 Md. 390, 394-95, 293 A. 2d 253, 255 (1972), has stated the sufficiency of evidence standards which warrant the granting or denial of a directed verdict:

"We have held that in reviewing the action of the trial court in granting a directed verdict for a defendant at the conclusion of a plaintiff's case, we will, in testing the sufficiency of the evidence, resolve all evidentiary conflicts in favor of the plaintiff and assume the truth of all the evidence and inferences that may naturally and legitimately be adduced therefrom in favor of the plaintiff's right to recover. *Durante v. Braun*, 263 Md. 685, 689, 284 A. 2d 241 (1971); *Home Insurance Company v. Metropolitan Fuels Company*, 252 Md. 407, 411, 250 A. 2d 535 (1969). We have also said that a

plaintiff has not met his burden of proof if he presents merely a scintilla of evidence where the jury must resort to surmise and conjecture to declare his right to recover. *Plitt v. Greenberg*, 242 Md. 359, 367, 219 A. 2d 237 (1966); *Fowler v. Smith*, 240 Md. 240, 246, 213 A. 2d 549 (1965). A hypothesis resting on surmise and conjecture is not enough to warrant a submission of the case to the jury. *Dorsey v. General Elevator Co.*, 241 Md. 99, 105, 215 A. 2d 757 (1966); *Moulden v. Greenbelt Consumer Services, Inc.*, 239 Md. 229, 232, 210 A. 2d 724 (1965)."

On the other hand, that same Court said in *Mass Transit Administration v. Miller*, 271 Md. 256, 315 A. 2d 772 (1974):

" 'Maryland has gone almost as far as any jurisdiction that we know of in holding that meager evidence of negligence is sufficient to carry the case to the jury'; that the rule requires submission of the case to the jury if there be any evidence, however slight, legally sufficient as tending to prove negligence, the weight and value of such evidence being left to the jury; . . . ."

*Curley v. General Valet Service*, 270 Md. 248, 311 A. 2d 231 (1973); *Fowler v. Smith, supra.*

Our task, then, is to determine whether appellants' case amounts to a mere hypothesis resting on surmise and conjecture or a skeleton fleshed out with sufficient — albeit meager — evidence requiring the issue to be submitted to the jury.

There is no dispute as to the basic legal principles governing this type of case: A customer of a department store is classified at law as an invitee. *Dickey v. Hochschild Kohn & Co.*, 157 Md. 448, 146 A. 282 (1929); *Link v. Hutzler Bros.*, 25 Md. App. 586, 335 A. 2d 192 (1975), *cert. denied*, 275 Md. 750 (1975). The duty owed by a proprietor to his customer was clearly stated by Judge Barnes speaking for

the Court of Appeals in *Honolulu Ltd. v. Cain*, 244 Md. 590, 595, 224 A. 2d 433, 435 (1966):

> "The duty of an occupant of land toward his business 'invitee' rested, in its inception, upon an implied representation of safety, 'a holding out of the premises as suitable for the purpose for which the visitor came . . .', Prosser, *Business Visitors and Invitees*, Selected Topics of the Law of Torts 243, 261 (1953). The word 'invitee' itself, conveys the idea that the place is held out to the visitor as prepared for his reception. The occupant does not, of course, become an insurer of the safety of those who accept his invitation. But when the public is led to believe that premises have been offered for its entry, the law is clear that the occupant assumes a duty of reasonable care to see that the place is safe for the purpose. The duty extends to those who are injured when they enter in response to the invitation."

Chief Judge Gilbert of this Court, in *Link v. Hutzler Bros.*, *supra*, noted that our Court of Appeals has cited with approval the view of the Restatement (Second) of Torts § 343, which states that a possessor of land is subject to liability for physical harm caused to his invitees by a condition on his property if he:

> "(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger."

*Accord, Mondawmin Corporation v. Kres*, 258 Md. 307, 266 A. 2d 8 (1970); *Honolulu Ltd. v. Cain, supra; Evans v. Hot Shoppes, Inc.*, 223 Md. 235, 164 A. 2d 273 (1960); *Glaze v.*

*Benson,* 205 Md. 26, 106 A. 2d 124 (1954); *Yaniger v. Calvert Building & Con. Co.,* 183 Md. 285, 37 A. 2d 263 (1944).

There is a distinction to be made between those cases which occur as a result of some overt action by the owner or his employees (waxing or oiling of floors) and those which for convenience have been designated as foreign object, notice type of cases. In the first type, notice is usually not an issue since the owner or his employees are alleged to have created the dangerous condition. In the case before us, which is an example of the second type, appellants offered no affirmative evidence to indicate that the owner of the premises or its employees created the dangerous condition complained of. The condition could have been created by innumerable intervening causes not attributable to either the owner or its employees. Appellants, then, must stand or fall on their legal position that the evidence shows that a dangerous condition existed, that the owner had actual or constructive knowledge of it, and that that knowledge was gained in sufficient time to give the owner the opportunity to remove it or to warn the invitee. *Lexington Market Authority v. Zappala,* 233 Md. 444, 197 A. 2d 147 (1964); *Rawls v. Hochschild Kohn & Co.,* 207 Md. 113, 113 A. 2d 405 (1955); *Montgomery Ward v. Hairston,* 196 Md. 595, 78 A. 2d 190 (1951).

There is no question that a dangerous condition existed in the Arlan store on the day that Mrs. Keene fell. In support of their contention that the store owner or his employees had notice of the condition, appellants offer the statement allegedly blurted out by the cashier. Appellees strenuously object to the admissibility of the statement on the ground that it is hearsay. We agree that it is hearsay but believe the trial court was correct in admitting it on the ground that it fell within the "excited utterance" exception to the hearsay rule. The requirements which must be shown in order to invoke the exception are discussed at some length in *Jackson v. State,* 31 Md. App. 332, 356 A. 2d 299 (1976). They are more succinctly set out in McCormick, *Evidence* § 297 (1972):

> "First, there must be some occurrence or event sufficiently startling to render normal reflective

thought processes of an observer inoperative. Second, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought."

6 Wigmore, *Evidence* § 1747 (3rd ed. 1940).

We believe that the circumstances surrounding the alleged statement by the cashier were sufficient to sustain its admission as an exception to the hearsay rule. The special reliability of the testimony is furnished by that excitement which suspends the declarant's powers of reflection and fabrication.

If the testimony of the appellants concerning the cashier's statement was believed by the jury, it could have raised an inference that the cashier, an agent of the owner of the premises, had knowledge of the dangerous condition and had relayed that information to "them." It was for the jury to determine who "them" referred to and to test the weight of the evidence in reaching its conclusion as to whether the appellants had met their burden of proof. Direct evidence that the cashier had notified some other person in authority was not necessary. Proof that she made the statement permits an inference that she notified her principal or employer, the store owner, that a dangerous condition existed in the premises and that an invitee might suffer injuries as a result.[2]

---

2. The admission into evidence of the "excited utterance" of the cashier is to be distinguished from the principle that the party who introduces the statement of an agent for the purpose of thereby binding the principal with an admission must first bear the burden of showing that an agency existed and that the statement was made while the agent was acting within the scope of his authority. Greenstein v. Meister, 279 Md. 275, 368 A. 2d 451 (1977); Wells v. Hecht Bros. & Co., 155 Md. 618, 623, 142 A. 258 (1928); Grzboski v. Bernheimer-Leader Stores, 156 Md. 146, 148, 143 A. 706 (1928). This principle has no applicability here since the testimony is admissible against the principal only to the same extent as that of any other person operating at the time and place under the same circumstances as the cashier in this case. The purpose of the introduction of the "excited utterance" here is not to prove an admission where the agency or agent's authority is in question — but to prove the circumstances from which the defendant's negligence may be inferred. See Restatement (Second) of Agency, § 289 d.

The appellants had the further responsibility of producing evidence that the dangerous condition had existed for a sufficiently long period of time for the owner or his employees to correct it or to warn his invitees. In support of that requirement, the following testimony of Leonard Keene was offered:

"Q. All right. Now, while you were in that line, were you facing the front of the store towards the cash registers? A. Yes, I was.

Q. All right. And did you have a clear view of the cashier number one and cashier number two? A. I had a clear view of cashier number one, not of number two. The people in front of me were blocking the view of cashier number two.

Q. But you could see cashier number one? A. Yes.

Q. How long had you observed the cashier number one? A. The whole time I was in the line.

Q. The whole fifteen minutes? A. (Nodding in the affirmative.)

Q. During that period of time did you see her talk to anybody other than the customers that were going through the line in the cashier's line?

A. No, I did not.

Q. Did you observe her constantly during that fifteen minute period of time? A. Yes, I did.

Q. Did you see her leave that booth at any time during that time? A. No, I did not.

Q. Did you see anybody approach that booth other than the people who were customers with their packages? A. No, I did not."

If the jury believed this testimony, it could have inferred that as no persons other than the customers were in communication with the cashier for a period of fifteen minutes, then the warning given to "them" — "that if this wasn't cleaned up, someone's going to fall," was given more than fifteen minutes before Mrs. Keene fell.

We are sympathetic with Judge Grady's uneasiness regarding the inconclusive state of the evidence but remain mindful of the requirement:

> "[T]hat before it can be determined *as a matter of law* that one has not been guilty of negligence, the truth of all the credible evidence tending to sustain the claim of negligence must be assumed and all favorable inferences of fact fairly deducible therefrom tending to establish negligence drawn; . . . ." (Emphasis supplied)

*Curley v. General Valet Service, supra,* at page 264. It is true that the inferences to be drawn from the evidence are arguable at best, but the determination of the weight of the evidence is the responsibility of the jury. We believe that the evidence offered by the appellants was sufficient to raise, at least, an inference of negligence on the part of the appellee and that the motion for a directed verdict should have been denied.

> *Judgment reversed.*
> *Case remanded for a new trial.*
> *Costs to be paid by appellee.*