577 A.2d 394

Mary S. BURWELL

v.

EASTON MEMORIAL HOSPITAL.

No. 1779, Sept. Term, 1989.

Court of Special Appeals of Maryland.

July 6, 1990.

Michael B. Roche, Riverdale, for appellant.

Paul F. Newhouse (Jeri Lynn Balenson and Eccleston and Wolf on the brief), Baltimore, for appellee.

Argued before ALPERT, ROBERT M. BELL and CATHELL, JJ.

ALPERT, Judge.

Appellant Mary S. Burwell was visiting a friend at Easton Memorial Hospital in May 1985. While ascending the stairs in a stairwell between the first and second floors, appellant slipped and fell on the remnants of a salad which had been spilled on the stairway. She filed a complaint against the hospital, appellee, in the Circuit Court for Talbot County, presumably alleging negligence. Following various discovery actions, the hospital filed a motion for summary judgment. Appellant responded to the motion and requested a hearing. At the conclusion of the hearing, Judge William S. Horne granted the hospital's motion for summary judgment. Appellant appeals and argues that the trial court erred in finding that she failed to produce sufficient

evidence of the hospital's negligence to overcome the motion for summary judgment.

◼ In determining whether a summary judgment has properly been granted, an appellate court must consider the facts stated, and the proper inferences to be drawn therefrom, in the light most favorable to the party against whom the motion is made. *Lawless v. Merrick*, 227 Md. 65, 70, 175 A.2d 27 (1961). "Those inferences, however, must be *reasonable* ones." *Clea v. City of Baltimore*, 312 Md. 662, 678, 541 A.2d 1303 (1988) (emphasis in original).

Central to appellant's opposition to the motion for summary judgment were three separate factual bases. She argues on appeal that the three facts, "when combined with the most favorable inferences deducible therefrom, support evidence of negligence sufficient to overcome Defendant's Motion for Summary Judgment." We disagree. We shall address each of the three in turn.

### 1. *The Condition of the Lettuce*

The parties agree that appellant was an invitee of the hospital and that the hospital therefore owed her the duty to use "reasonable and ordinary care to keep [the] premises safe for the invitee and to protect the invitee from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for [her] own safety, will not discover." *Kirby v. Hylton*, 51 Md.App. 365, 370, 443 A.2d 640 (1982) (quoting *Bramble v. Thompson*, 264 Md. 518, 521, 287 A.2d 265 (1972)). As appellant correctly notes, she presented "no evidence that the Defendant by its own actions created the dangerous condition and therefore there must be some evidence that the owner of the premises had actual or constructive knowledge of the presence of the dangerous condition and that the knowledge was gained in sufficient time to afford the owner an opportunity to remove it or to warn the invitee." Appellant's Brief at 6 (citing *Lexington Market Auth. v. Zappala*, 233 Md. 444, 197 A.2d 147 (1964)). In discussing a closely analogous duty owed by a store to its customer, the Court of Appeals stated in *Rawls*

*v. Hochschild, Kohn & Co.,* 207 Md. 113, 113 A.2d 405 (1955), that:

> [T]he customer cannot recover unless it appears that the storekeeper could have discovered the condition by the exercise of ordinary care so that, if it is shown that the condition existed for a length of time sufficient to permit a person under a duty to discover it if he had exercised ordinary care, his failure to discover it may in itself be evidence of negligence sufficient to charge him with knowledge of it.

*Id.* at 120, 113 A.2d 405.

In the affidavit in support of her response to the hospital's motion for summary judgment, appellant stated that the salad on which she fell "looked old as the lettuce was wilted and discolored." When asked during her deposition whether the lettuce was brown, appellant responded, "It was like—I don't know, I guess it was in the middle between green and brown. I don't know. It's been so long, but I do know it was lettuce or a salad. . . ." Appellant argues that these observations support a contention that the foreign substance had been on the stairs for a long time before she stepped on it, and that a jury reasonably could have inferred from this that the hospital was on constructive notice that the salad was there. Evidence that a foreign substance causing a fall on a staircase looked dirty or otherwise appeared to have been there for a long time, however, generally has been held not to support a finding that the substance was there long enough to be discovered and remedied by the storekeeper. 62A Am.Jur.2d *Premises Liability* § 593, at 157 (1990). *See, e.g., Bates v. Winn–Dixie Supermarkets, Inc.,* 182 So.2d 309, 311 (Fla.App. 1966), *cert. denied,* 188 So.2d 813 (Fla.1966) (fact that banana peel causing fall was black did not warrant an inference that it had been there for any length of time where there was no evidence that peel was not already black when it reached floor); *Kramer v. F.W. Woolworth,* 255 Iowa 633, 123 N.W.2d 572, 574 (1963) (fact that gum that caused plaintiff to fall on stairs was dirty and hard did

not show gum had been there for any length of time because "[i]ts condition would have been the same if it had been stepped on once or twice or more within ten minutes or five or ten hours"); *Great Atlantic & Pacific Tea Co. v. Berry*, 203 Va. 913, 128 S.E.2d 311, 313 (1962) (fact that celery was discolored after customer's fall did not show that it had been on the floor for a substantial length of time, since discoloration could have been caused by plaintiff's foot).

■ Similarly, the fact that the lettuce was discolored raises no inference that the salad had been on the stairs for any length of time at all. The lettuce could have been brown before it ever landed on the stairs, or it could have turned brown when appellant stepped on it.[1]

---

**1.** *See* 2 *Wigmore on Evidence* § 437 (3d ed. 1940), wherein the authors of the learned treatise stated:

> When the existence of an object, condition, quality, or tendency at a given time is in issue, the *prior existence* of it is in human experience some indication of its probable persistence or continuance *at a later period.*
>
> The degree of probability of this continuance depends on the chances of intervening circumstances having occurred to bring the existence to an end. The possibility of such circumstances will depend almost entirely on the nature of the specific thing whose existence is in issue and the particular circumstances affecting it in the case in hand.... So far, then, as the *interval of time* is concerned, no fixed rule can be laid down; the nature of the thing and the circumstances of the particular case must control. [Cited with approval by the Court of Appeals in *Sims v. State*, 319 Md. 540 [573 A.2d 1317] (No. 113, September Term, 1988, filed May 30, 1990).]
>
> Similar considerations affect the use of *subsequent existence* as evidence of existence at the time in issue. Here the disturbing contingency is that some circumstance operating in the interval may have been the source of the subsequent existence, and the propriety of the inference will depend on the likelihood of such intervening circumstances having occurred as the true origin. One landing at New York can hardly infer that the vessel at the next dock has been there for a week; but he may infer that the dock has been there for some years. In the latter instance the particular circumstances of appearance and the like will affect the length of time to which the inference could be carried back. Here, as elsewhere, the *interval of time* to which any inference will be

## 2. *The Nurse's Statement*

█ Appellant also stated in her affidavit that an unidentified nurse—one of three whom she immediately told about her fall—said, "[S]omeone should have cleaned it up." Appellant cited *Keene v. Arlan's Department Store,* 35 Md. App. 250, 370 A.2d 124 (1977) for the propositions that (1) the nurse's statement was admissible as an "excited utterance" exception to the hearsay rule, and (2) apparently, that the statement permitted an inference that the hospital had notice of the salad on the stairs.

Assuming, without conceding, that the nurse's statement was admissible, we conclude that it raised no inference of notice. In *Keene,* a department store cashier who saw the plaintiff fall on a slippery spot on the floor blurted, "I told them if this wasn't cleaned up, someone's going to fall." *Id.* at 252, 370 A.2d 124. We concluded in that case that "[p]roof that [the cashier] made the statement permits an inference that she notified her principal or employer, the store owner, that a dangerous condition existed in the premises and that an invitee might suffer injuries as a result." *Id.* at 257, 370 A.2d 124.

*Keene* is clearly distinguishable from the case before us in that, unlike the cashier in *Keene,* the nurse said nothing to indicate that she had been aware of the salad on the stairs before appellant fell. There also is no indication that the nurse told anyone about the foreign substance. Thus, appellant's reliance on *Keene* is misplaced. The nurse's statement permitted no reasonable inference that the hospital had knowledge—either actual or constructive—of the salad on the stairs.

## 3. *The Letter from the Hospital Official*

█ The third "fact" upon which appellant based her response to the hospital's motion for summary judgment was the June 10, 1985 letter to appellant from Joseph M.

---

allowable must depend upon the nature of the thing and the circumstances of the particular case.

Sheehan, the hospital's associate administrator. The pertinent portions of the letter read as follows:

> After examining the facts concerning your alleged fall ("alleged" because there were no Hospital employee eyewitnesses) at Memorial Hospital on May 5, 1985, it seems that there was some food spilled at the top of the stairwell where your fall took place.
>
> Review of your medical record reveals that prompt attention was given you, and X-rays indicated no apparent injury; although a contusion was noted. Since you complain of continued pain, the Hospital would like to recommend that a specialist inspect the injury site, and assist you in a prescribed treatment plan, if necessary. We suggest you make an appointment with Dr. Charles Webb, an Orthopedist on the Medical Staff of Memorial Hospital. Dr. Webb has considerable experience in his field, and enjoys a fine reputation in the community. The Hospital will assume financial responsibility for your treatment should you avail yourself of our offer.

Counsel for the hospital argued at the motions hearing that the letter was "an offer to settle a dispute, and as such would not be admissible in the Circuit Court in a jury trial." The trial judge ruled that the letter would not be admissible at trial, saying,

> But it goes beyond mere technical rules of evidence. It's the reason for that rule of evidence that—perhaps not the one [counsel for the hospital] cited—but it would be ... a sad state of affairs indeed when such an offer of assistance is taken as an admission of liability, and used against the person so making it as such.

We cannot tell from this comment exactly why the trial judge ruled that the letter was inadmissible. We note, however, that "a trial court's decision may be correct although for a different reason than relied on by that court." *Robeson v. State*, 285 Md. 498, 502, 403 A.2d 1221 (1979), *cert. denied*, 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980).

We reiterated the correct statement of the law regarding the hospital official's letter in *John J. Kirlin, Inc. v. Gaco Systems, Inc.*, 80 Md.App. 506, 514, 565 A.2d 114 (1989), where we stated that "[e]vidence of offers made by a party to litigation of compromise is inadmissible as a matter of public policy which encourages settlements of disputed claims." [2] We believe the hospital official's letter constituted such an offer of compromise and that it therefore would have been inadmissible at trial. The trial judge's ruling on the letter was correct.

Because the hospital official's letter was inadmissible and neither the condition of the lettuce nor the nurse's statement created a reasonable inference that the hospital had actual or constructive knowledge of the foreign substance on the stairs, we hold that the trial judge correctly granted the hospital's motion for summary judgment.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.

---

**2.** Although appellant had not filed her complaint at the time the letter was written, and thus she and the hospital were not "part[ies] to litigation" at that point, the two sides must have realized even then that litigation was probable.