727 A.2d 958

Sarah CARTER

v.

SHOPPERS FOOD WAREHOUSE MD CORPORATION.

No. 1158, Sept. Term, 1998.

Court of Special Appeals of Maryland.

April 13, 1999.

148

Robert L. Bell (C. Vaughn Adams on the brief), Washington, for appellant.

Christopher R. Dunn (CeCaro, Doran, Siciliano, Gallagher & DeBlasis, LLP on the brief), Lanham, for appellee.

Argued Before DAVIS, SALMON and EYLER, JJ.

DAVIS, Judge.

On November 21, 1993, appellant Sarah Carter fell, injuring her knee when she slipped on a rubber mat in the produce section of a grocery store owned by appellee Shoppers Food Warehouse MD Corporation. Subsequently, appellant filed a complaint on October 1, 1996 in the Circuit Court for Prince George's County, alleging that appellee negligently failed to maintain its premises in a safe condition. Following discovery, appellee filed a motion for summary judgment on June 18, 1997, and the court (Ahalt, J.) held a hearing on the motion on November 10, 1997. Before the court ruled on the summary judgment motion, appellee filed a motion in limine on December 8, 1997 to exclude appellant's safety expert from testifying at trial. In an order dated February 10, 1998, the court granted both appellee's motion for summary judgment and its motion in limine.

Appellant timely filed this appeal on February 24, 1998,[1] and presents for our review four questions that we restate as follows:

I. Did the circuit court abuse its discretion by granting appellee's motion *in limine* and excluding the testimony of appellant's expert witness?

II. Was the circuit court clearly erroneous in its finding that the facts were insufficient to allege that appellant had notice of the condition of the rubber mat?

III. Did appellant generate disputes of material fact and the need for credibility determinations resulting in the circuit court having abused its discretion by granting summary judgment to appellee?

IV. Did the circuit court's ruling deprive appellant of her right to a jury trial?

We answer all questions in the negative and affirm the circuit court's judgment for the reasons set forth herein.

## FACTS

Appellant, currently eighty years of age, entered the Shoppers Food Warehouse store in Queenstown, Maryland on the morning of November 21, 1993. Since the store opened in 1992 appellant had been a regular customer, shopping there approximately once each week. After walking into the store, appellant procured a shopping cart and selected a few items near the entrance. Upon reaching the produce section,[2] appellant left her cart parked and walked across a carpet or rubber floor mat to get some vegetables.

In her deposition, appellant stated that she saw a few fallen beans on the floor and, after having "rushed over to the

---

1. On May 5, 1998, we dismissed appellant's appeal because of her failure to file a pre-hearing information report. After considering appellant's motion to reinstate the appeal, however, we reinstated the appeal through an order dated June 24, 1998.

2. Appellant recalled being in the store for approximately fifteen to twenty minutes prior to reaching the produce section.

beans" to acquire some for herself, she turned to return to her cart. As appellant attempted to put the beans into her cart, she fell, injuring her knee, and, when she looked up, she realized that one corner of the carpet was turned up. Appellant did not notice whether the carpet was turned up before she fell; however, she believed the corner of the carpet was the cause of her accident. Her deposition testimony included the statement, "I slipped on that carpet, rug, and the end of the carpet, evidently I knocked that up or it was already up and my shoes or something went under it. That is the only thing I know." In addition, appellant thought she stepped on a fallen bean, although she did not think the bean at all caused her to slip and fall.

Subsequent to appellant's fall, the store manager at the time, Robert Thacker, interviewed appellant and completed an incident report.[3] In his deposition, Thacker stated that the store maintains a daily floor sweep log, in which employees are supposed to document when they complete a sweep and include their initials next to the time. Although it is not a written policy of the store, Thacker related that, through on-the-job training, employees learn that the produce area should be swept every one-half hour. With respect to appellant's slip and fall, Thacker's incident report reflects that the fall occurred at 12:05 p.m., at which time a produce clerk, Ellis Woods, had just completed sweeping the produce area. Entries in the daily floor sweep log were made at 11:15 a.m. and 12:00 p.m.; however, the initials next to the specified times read "AW," rather than "EW."[4] The sweep log does not have the initials "EW" next to any time until 4:05 p.m., thereby

---

3. The report indicates the accident occurred at 12:05 p.m., although appellant contends it occurred between 10:30 and 11:00 a.m.

4. We note that appellee submitted two different sweep logs from November 21, 1993, one in which the last entry was 12:00 p.m. and another in which the entries were filled until after 8:00 p.m. The record does not indicate the reason for the two versions, although we surmise that the incomplete version was a copy made after the accident occurred.

creating a dispute between the parties over the accuracy of Thacker's incident report.

During discovery, appellant retained a fire and safety expert, Eugene M. Sober, to investigate the accident. Sober concluded that the carpet was turned up before appellant fell and the turned-up carpet was the cause of appellant's fall. He further determined that the carpet itself was substandard because it was thin and should have been heavy duty and the turned-up carpet could have existed for an unacceptable period of time during which appellee's management should have noticed the dangerous condition it created.

In order to reach these conclusions, Sober relied on his education, training, and experience, specifically in the area of building codes and standards, as well as on his investigation of the accident at issue. Sober's investigation, however, consisted solely of interviewing appellant for approximately twenty to thirty minutes and inspecting the grocery store for another fifteen minutes. Also, Sober physically moved and pushed the carpets with his hands and feet but failed to perform any laboratory testing. At the time of Sober's observation, over four years after the accident, the produce section had been reorganized and the store had new carpets supplied by a company different than that in 1993. In addition to failing to test the mats scientifically, Sober did not interview anyone from appellee's previous carpet supplier, nor did he attempt to ascertain the nature of the carpets present when the accident occurred.[5] Furthermore, Sober was not aware of any local or state laws requiring a particular weight or type carpet for safe use in grocery stores.[6] Finally, Sober's conclusion that the

---

**5.** Appellee's Safety Coordinator, Larry Armbuster, stated in an affidavit that the carpets in the produce department during appellant's slip and fall were leased by a company named Matworks, but the carpets in the store when Sober investigated were supplied by CINTAS Corporation.

**6.** Sober cited the Basic/National (BOCA) Codes, but only for the general requirement that "all buildings and structures and all parts thereof, both existing and new, shall be maintained in a safe and sanitary condition."

carpet presented a hazard was premised upon appellant's assumption that the carpet was turned up before she fell.

On June 20, 1997, appellee filed a motion for summary judgment, asserting that it was entitled to judgment as a matter of law because there was no genuine issue of material fact. In. addition, on December 11, 1997, appellee filed a motion *in limine* to preclude Sober's testimony, arguing that the factual basis for his testimony was insufficient. The court granted both of appellee's motions in an order dated February 10, 1998, stating the following:

> After reviewing arguments and case law on the issue of expert testimony, this [c]ourt concludes that an insufficient factual basis exists to support the expert testimony. Consequently, testimony of [appellant's] expert will not be admissible. Additionally, this [c]ourt concludes that there are insufficient facts to establish a *prima facie* case of negligence. Therefore, [appellee's] Motion for Summary Judgment is granted.

This appeal was noted on February 24, 1998.

## DISCUSSION

### I

Appellant contends that the circuit court abused its discretion by granting appellee's motion *in limine* and excluding the testimony of appellant's expert witness, Eugene M. Sober. The admissibility of expert testimony is a matter soundly within the trial court's broad discretion, and the court's decision rarely will constitute grounds for reversal. *See Franch v. Ankney*, 341 Md. 350, 364, 670 A.2d 951 (1996); *Hartless v. State*, 327 Md. 558, 576, 611 A.2d 581 (1992); *Hartford Accident and Indem. Co. v. Scarlett Harbor Assocs. Ltd. Partnership*, 109 Md.App. 217, 287, 674 A.2d 106 (1996), *aff'd*, 346 Md. 122, 695 A.2d 153 (1997).[7] Therefore, a trial

---

7. We note that the same rules governing the admissibility of expert testimony at trial also apply to summary judgment. *See Hartford Accident and Indem. Co.*, 109 Md.App. at 286, 674 A.2d 106 (citing

judge's decision in this area will not be disturbed absent "abuse of discretion, error of law, or other serious mistake." *N.B.S., Inc. v. Harvey,* 121 Md.App. 334, 339, 709 A.2d 162 (1998).

█ According to appellant, appellee misled the trial court into performing a *Frye–Reed* test,[8] which appellant contends was inappropriate, considering Sober's conclusions did not involve a novel scientific technique, but rather an opinion on safety measures. Although we agree with appellant that the *Frye–Reed* test is irrelevant, the court's order reflects that it correctly reviewed the expert's opinion using the elements of Rule 5–702, not the *Frye–Reed* test.

█ Maryland Rule 5–702 (1999) provides:

Expert testimony may be admitted, in the form of an opinion or otherwise, if the court determines that the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. In making that determination, the court shall determine (1) whether the witness is qualified as an expert by knowledge, skill, experience, training, or education, (2) the appropriateness of the expert testimony on the particular subject, and (3) whether a sufficient factual basis exists to support the expert testimony.

Therefore, expert testimony is not necessary when it relates to "matters of which the jurors would be aware by virtue of common knowledge." *Hartford Accident and Indem. Co.,* 109 Md.App. at 257, 674 A.2d 106. An expert's opinion "has no

---

*Helinski v. Rosenberg,* 90 Md.App. 158, 166, 600 A.2d 882, *rev'd on other grounds,* 328 Md. 664, 616 A.2d 866 (1992), *cert. denied,* 509 U.S. 924, 113 S.Ct. 3041, 125 L.Ed.2d 727 (1993)).

**8.** The *Frye–Reed* test refers to the standard for establishing the reliability of expert scientific opinions and is derived from two cases, *Frye v. United States,* 293 F. 1013 (1923), and *Reed v. State,* 283 Md. 374, 391 A.2d 364 (1978). The test requires that before a scientific opinion will be received at trial, the basis for that opinion must be generally accepted within the expert's scientific field. *See Reed,* 283 Md. at 380–81, 391 A.2d 364.

probative force unless there is a sufficient basis upon which to support his conclusions." *N.B.S., Inc.,* 121 Md.App. at 340, 709 A.2d 162 (quoting *Worthington Constr. Corp. v. Moore,* 266 Md. 19, 29, 291 A.2d 466 (1972)); *see also* Lynn McLain, *Maryland Evidence* § 705.1 (1987) ("[i]f no adequate basis for the opinion is shown, the opinion should not be admitted.").

■ The trial court's order stated:

The dispute turned on whether a sufficient factual basis existed to support his testimony.... In the expert's deposition, it was discovered that there are no scientific or professional standards to support his conclusion, that the expert performed no scientific testing, the only testing done was to flip over the corner of the mat with his foot, he interviewed [appellant] for twenty to thirty minutes, he inspected [the grocery store] for fifteen minutes four and a half years after the accident occurred, and the mats inspected were made by a different company than [appellee] used at the time of the accident. Additionally, there is no law nor regulation governing the particular thickness of floor mats. Based on the above analysis of applicable facts and law, this court grants the motion in limine and finds the expert's testimony inadmissible.

The trial court excluded Sober from testifying because his opinion was inappropriate and was not supported by a sufficient factual basis, not because his methodology had not yet gained general acceptance.

■ In her argument that the court erred by excluding Sober, appellant first asserts that qualifying as an expert is not onerous and direct knowledge is not a requirement. This contention is undisputed and, although appellee concedes that Sober is well qualified as a safety expert, it submits that Sober did not have a sufficient factual basis to support his testimony. In response, appellant's brief reads, "an expert is not required to possess direct personal knowledge of a matter in order to express an opinion and 'complaints about the manner in which the expert derived and stated his opinion go to the weight to be given to his testimony rather than its admissibility.' "

(quoting *Bastian v. Laffin,* 54 Md.App. 703, 713, 460 A.2d 623 (1983)). Therefore, appellant asserts that the court's exclusion of Sober's opinion because of an insufficient factual basis should have gone to the weight of his testimony, not the admissibility.

We disagree with appellant's reliance on *Bastian,* which involved an appraiser whose testimony included within it a valuation of personal property from an estate. Appellant omitted an instrumental phrase from the above-quoted passage from *Bastian.* The actual language reads, "stated his opinion *as to value.*" *See id.* at 713, 460 A.2d 623 (emphasis added). Thus, while an objection to an expert's valuation of property goes to the weight of the testimony, Sober's opinion is not remotely relative to a value analysis.

Appellant also cites *Stickell v. City of Baltimore,* 252 Md. 464, 250 A.2d 541 (1969), for the proposition that attacks on the foundation of an expert's opinion are made to the weight of the opinion, not its admissibility. The Court of Appeals in *Stickell* simply stated in a footnote that a property owner could make an opinion as to the value of his property without qualification as an expert. *See id.* at 473 n. 1, 250 A.2d 541. In fact, the Court held that the trial court did not abuse its discretion by excluding the testimony of an appraiser offered as an expert despite the potential that his extensive knowledge of real estate and intuitive approach may have provided accurate results. *See id.* at 474–75, 250 A.2d 541. The Court concluded, "he was unable to explain his results in terms of normal methods of appraisal, so that the trial court was justified in finding that his testimony could have been of no assistance to the jury." *Id.*

This rationale is analogous to the instant case, in which appellant's expert had extensive knowledge of safety standards and regulations, but limited his investigation to the testimony of an interested party and a cursory analysis of the store and its current carpets.[9] Appellant argues that appel-

---

9. Appellant also cites *Mondawmin Corp. v. Kres,* 258 Md. 307, 266 A.2d 8 (1970), in which an expert was permitted, in a slip and fall case, to

lee's refusal during discovery to provide "scientific information" regarding the carpet at issue prevented Sober from making a complete evaluation. Specifically, appellant submits that appellee attempted to conceal the nature of the mats, and she points to an interrogatory answer in which appellee responded that it did not know the name of the mats. This allegation is unfounded when appellee's answer is viewed in full:

> The floormats in use were standard commercial grade floormats, which we believe to be standard throughout the retail industry. We do not know the brand name of the mats. This information may be available from the vendor who supplied the mats for the subject location, which is Matworks. The mats were leased from Matworks, who would deliver clean mats to the store location and remove all existing mats at the time for inspection and cleaning at their facility.

Appellee did not conceal information regarding the specifications of the floormats. Instead, it referred appellant to the company from which the grocery store had obtained the mats. Appellant may not bolster her expert's analysis by claiming to have been stonewalled during discovery.

The trial court did not err in determining that Sober's testimony would not assist the jury's understanding of a fact in issue because a juror's common knowledge sufficiently provides him or her the ability to comprehend a slip and fall on a carpet. Notably absent from Sober's opinion were both statutory guidelines requiring a certain weight or type carpet and scientific testing of the actual carpet at issue. Without such information, there was no foundation upon which to

---

testify that an accumulation of water on the steps at issue made them slippery. The expert in *Mondawmin Corp.* inspected the steps as well as examined their texture and composition, and there already was evidence indicating that water had accumulated on the steps. *See id.* at 320–21, 266 A.2d 8. Therefore, *Mondawmin Corp.* is distinguishable because appellant's expert, in the case *sub judice,* based his opinion on the inferences made by appellant that the carpet was turned up and a more speculative examination performed over four years after the accident.

admit his testimony that the carpet at issue was inappropriate or dangerous.[10] Keeping in mind that the court had wide discretion in making this determination, the trial court did not abuse this discretion by excluding Sober's testimony.

## II and III

Appellant next argues that the trial court was clearly erroneous in finding the facts insufficient to prove that appellee had notice of the rubber mat's condition. Appellee's knowledge is a crucial element of appellant's claim. Consequently, we also shall address within this section appellant's third assertion, that she generated disputes of material fact and a need for credibility determinations resulting in the court having abused its discretion by granting summary judgment to appellee. Essentially, appellant argues that the court erred in granting appellee summary judgment.

In deciding a motion for summary judgment, the court must determine whether a genuine dispute as to material facts exists and whether either party is entitled to judgment as a matter of law. *Tennant v. Shoppers Food Warehouse Md Corp.*, 115 Md.App. 381, 386, 693 A.2d 370 (1997) (citations omitted). Furthermore, the disputed fact must be material, defined as "a fact that will alter the outcome of the case depending upon how the factfinder [sic] resolves the dispute over it." *Id.* at 387, 693 A.2d 370 (quoting *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md.App. 470, 489, 665 A.2d 297 (1995), *cert. denied*, 341 Md. 172, 669 A.2d 1360 (1996)). Finally, "all disputes of fact, as well as all inferences reasonably drawn from the evidence, must be resolved in favor of the non-moving party." *Id.* (citing *Bagwell*, 106 Md.App. at 488, 665 A.2d 297). When reviewing a trial court's decision on a motion for summary judgment, an appellate court determines

---

**10.** Appellant argues that the court erroneously relied on the lack of regulations governing the floor mats because the instant case "is grounded in the common-law and alleges violation of the time tested notions of ordinary care and reasonable conduct by [appellee]." This argument, however, undermines appellant's opinion that expert testimony is necessary and would assist the jury.

whether there was sufficient evidence to create a jury question. *See Martin v. ADM Partnership,* 106 Md.App. 652, 657, 666 A.2d 876 (1995), *rev'd on other grounds,* 348 Md. 84, 702 A.2d 730 (1997). Therefore, the standard of our review is whether the court was legally correct. *See Beatty v. Trailmaster Prods., Inc.,* 330 Md. 726, 737, 625 A.2d 1005 (1993).

With these principles in mind, we turn to appellant's contention that the evidence was sufficient to create a jury question regarding appellee's negligence.[11] Appellee is subject to liability for a condition that causes harm on its property if the "evidence shows that a dangerous condition existed, that the owner had actual or constructive knowledge of it, and that that knowledge was gained in sufficient time to give the owner the opportunity to remove it or to warn the invitee." *Keene v. Arlan's Dep't Store of Baltimore, Inc.,* 35 Md.App. 250, 256, 370 A.2d 124 (1977).

Appellant asserts that a dispute existed pertaining to the cause of her fall. First, appellant alleges she never departed from her testimony that "she was tripped by [appellee's] mat," despite appellee's reliance on her testimony that the cause of her fall was uncertain. Appellant stated in her deposition, "I slipped on that carpet, rug, and the end of the carpet, evidently I knocked that up or it was already up and my shoes or something went under it. That is the only thing I know." In addition, according to appellant, appellee believed some factor other than the carpet caused the fall, and this discrepancy created a factual dispute. We are not convinced that appellant generated a dispute of material fact over the existence of a dangerous condition. We shall assume, however, that the

---

**11.** Our analysis of whether there was a material dispute concerning the negligence of appellee, as owner of the property where appellant was injured, is dependent on appellant's status at the time of her fall. *See Tennant,* 115 Md.App. at 387, 693 A.2d 370. Appellee owed appellant the highest duty because appellant was a business invitee, "one invited or permitted to enter another's property for purposes related to the landowner's business." *Id.* at 388, 693 A.2d 370 (quoting *Casper v. Chas. F. Smith & Son, Inc.,* 71 Md.App. 445, 457, 526 A.2d 87 (1987), *aff'd,* 316 Md. 573, 560 A.2d 1130 (1989)).

material dispute exists because, in this case, the propriety of the court's grant of the motion for summary judgment depends upon appellee's knowledge of the condition.

Appellant argues that she demonstrated a genuine dispute of material fact as to appellee's exercise of reasonable care. She alleges that appellee's employees swept the produce area too infrequently to prevent accidents such as hers. In addition, appellant questions the validity of the sweep logs appellee maintains because two different versions were submitted, one that was completed only until the time of the accident and another that contained entries for the entire day and evening. According to appellee's safety supervisor, Robert Thacker, an employee, Ellis Woods, finished sweeping the produce area immediately prior to appellant's accident. The initials in the sweep log, however, demonstrate that "AW," rather than "EW," swept the area at 11:15 a.m. and again at 12:00 p.m. Although Thacker incorrectly identified the employee, the log establishes that someone swept the floor approximately fifty minutes before the accident and possibly immediately before, assuming that the accident occurred at 12:05 p.m., as indicated in the incident report.[12] Despite appellant's questioning of the authenticity of the sweep log, the log was completed for the previous day, November 20, 1993, and appears to be part of the normal job regiment for appellee's employees.

Even if there was uncertainty surrounding the time that elapsed between the last produce area sweep and appellant's accident, the court was legally correct in granting summary judgment. Assuming the carpet was turned up, appellant failed to present evidence either that appellee had actual or constructive knowledge of the carpet or that the knowledge was gained in sufficient time for appellee's employees to have the opportunity to remove it or to warn appellant or other shoppers. If appellant presented evidence that someone saw the carpet turned up at some time prior to the

12. Appellant's contention that the accident occurred between 10:30 and 11:00 a.m. is unavailing considering that the sweep log also contains entries for 10:00 and 10:46 a.m.

accident, the entries in the sweep log may have become an issue and created a question for the jury. The grocery store "is not an insurer of the safety of [its] customers," *Moulden v. Greenbelt Consumer Servs., Inc.,* 239 Md. 229, 232, 210 A.2d 724 (1965), and "it would be unreasonable to hold that it is [its] duty to conduct a continuous inspection tour of the store." *Id.* at 233, 210 A.2d 724.

Appellant relies on *Gast, Inc. v. Kitchner,* 247 Md. 677, 234 A.2d 127 (1967), for the proposition that a factual dispute may be created regardless of whether the carpet was known, prior to the accident, to be in a dangerous position. In *Gast,* the plaintiff slipped and fell on ice that developed outside the defendant's store when the defendant shoveled snow from a walkway that went directly under a drainage spout. The plaintiff, however, did not observe the ice and did not know it caused her fall until feeling the ice when she fell to the pavement. In concluding that the defendant's negligence was a jury question, the Court of Appeals relied on the defendant's actual knowledge of the drainage condition and, given the weather at the time, constructive knowledge that ice would form. *See id.* at 685, 234 A.2d 127. *Gast* is distinguishable in two respects. First, the danger—the ice—clearly was present before the plaintiff fell, unlike the instant case in which it is uncertain for what period, if at all, the carpet was turned up prior to the fall. Second, it is more speculative to charge appellee with constructive knowledge of a hazard which may or may not have existed and which appellee, even through the exercise of reasonable care, may not have been capable of preventing.

Appellant further relies on *Nalee, Inc. v. Jacobs,* 228 Md. 525, 180 A.2d 677 (1962), where a bench in a hotel collapsed, injuring the two people sitting on it. The Court of Appeals affirmed that the hotel's negligence was a question for the jury because the bench was used in an expected fashion and the evidence supported a finding that the hotel breached its duty to provide safe equipment and make proper inspections of such equipment. *See id.* at 530, 180 A.2d 677. Appellant attempts to analogize the bench from *Nalee* to the carpets in

the case *sub judice.* This comparison is unconvincing considering that appellee's employees periodically had swept the produce area and, other than speculation, there was no evidence to corroborate that the mats were unsafe.[13]

▇▇ Appellee contends that the instant case is analogous to *Moulden v. Greenbelt Consumer Services, supra.* We agree. In *Moulden,* a woman in a grocery store slipped on a mashed green bean and injured her back while walking along an aisle looking at a display. The Court of Appeals affirmed the trial court's grant of a directed verdict in favor of the grocery store on the basis that the plaintiff failed to establish a *prima facie* case of negligence. *See Moulden,* 239 Md. at 231, 210 A.2d 724. Although the trial judge must interpret all natural and legitimate inferences in the plaintiff's favor,

> where the plaintiff has not shown by any evidence that the injuries sustained by him were a direct consequence of negligence on the part of the defendant, and there is no rational ground upon which a verdict for the plaintiff could be based, the trial judge should direct a verdict in favor of the defendant.

*Id.* at 232, 210 A.2d 724 (citing *Rawls v. Hochschild, Kohn & Co.,* 207 Md. 113, 122, 113 A.2d 405 (1955)). The Court concluded that the plaintiff failed to demonstrate that the store owner created the dangerous condition, or had actual or constructive knowledge of it, and summarized:

> There being no evidence as to how long the bean had been on the floor, and it being possible that another customer may have dropped it just before appellant stepped on it, any finding by a jury that the employees of the store saw the bean or should have seen it in time to remove it or warn

---

**13.** Appellant's expert opined that appellee's floor mats created a tripping hazard that could have been avoided by using heavy duty mats or no mats at all. As discussed above, however, the court properly excluded his testimony based on Rule 5–702 because a factual basis for such an opinion was absent. Therefore, while we shall consider the alleged danger the turned-up carpet presented, we decline to consider the argument that appellee created the danger through its use of patently unsafe mats.

appellant, would rest on pure conjecture and not on reasonable inference.

*Id.* at 233, 210 A.2d 724 (citation omitted). Equally, there was no evidence in the instant case as to how long the carpet had been turned up and allegations of knowledge of the condition on the part of appellee are merely speculation and conjecture.

Also of relevance is the Court of Appeals's decision in *Lexington Market Auth. v. Zappala,* 233 Md. 444, 197 A.2d 147 (1964), wherein a customer sued a parking garage operator for injuries sustained when the plaintiff slipped and fell on a spot of oil or grease in the parking garage as she returned to her car. The Court reversed a jury verdict in the plaintiff's favor and entered judgment for the defendant because the plaintiff did not meet her burden of proof "that the condition was caused by the proprietor or its employees, or that there was actual notice of the condition." *Id.* at 446, 197 A.2d 147. Although the operator should anticipate that oil or grease may leak occasionally from vehicles, he is not an insurer and "we think it would be unreasonable to hold that it is his duty to continuously inspect and sand down any and all leakage as soon as it occurs, even if we assume that periodic inspections are necessary." *Id.* In the instant case, without appellant having presented evidence of appellee's actual or constructive knowledge of the dangerous condition, it would not be reasonable to require appellee constantly to inspect the produce section and fix the floor mats each time a corner becomes misplaced or turned up.

The only evidence appellant presented that was not conjecture was that she fell on the carpet. Whether the carpet was turned up prior to her fall and if so, the length of time it was turned up, were matters of mere speculation. Even if we assume that the carpet was turned up, we also would have to assume that appellee had actual or constructive knowledge of the carpet's condition in order for there to be a dispute of material fact. Absent evidence of appellee's knowledge of the condition, the court was legally correct in granting summary judgment to appellee. *See Moulden,* 239 Md. at 232, 210 A.2d 724 ("A mere surmise that there may have been negligence

will not justify the court in permitting the case to go to the jury").

## IV

 Appellant's final contention is that the court's ruling deprived her of the right to a jury trial. As support for this argument, appellant asserts that the trial court actually recognized a dispute but "found in conclusory fashion" that summary judgment was proper because her expert's testimony was inadmissible. The court's order reads, "[Appellant's] case rests upon the turned up floor mat being the cause of the fall and that [appellee] is negligent because [it] failed to take reasonable care to protect [appellant] from the floor mat. The dispute turns on whether [appellee] had notice of the condition." We do not interpret the court's use of "dispute" as referring to the creation of a material dispute in the summary judgment context. Instead, the court appeared to use "dispute" to express that the continuation of appellant's suit depended on whether appellee knew of the condition.[14] As we stated previously, appellant was unable to present sufficient evidence of appellee's knowledge of the alleged dangerous condition, and the court did not err in granting summary judgment. Therefore, because the court's grant of summary judgment was proper, it did not interfere with appellant's right to a trial by jury. *See generally Frush v. Brooks*, 204 Md. 315, 104 A.2d 624 (1954).

---

14. As support for her argument that a material dispute existed, appellant cites cases in which circumstantial evidence sufficiently generated a jury question. Two of the cases involve a proximate cause discussion, which is not determinative of the instant appeal. *See Suburban Trust Co. v. Waller*, 44 Md.App. 335, 408 A.2d 758 (1979); *Sun Cab Co. v. Reustle*, 172 Md. 494, 192 A. 292 (1937). The final case cited by appellant holds that the trial court makes the initial determination on the strength and genuineness of circumstantial evidence. *Short v. Wells*, 249 Md. 491, 495–96, 240 A.2d 224 (1968). Unlike the case, *sub judice*, only when the court determines that the inference of negligence is more probable than not is a jury question created. *See id.* Appellant, therefore, is mistaken in her contention that circumstantial evidence in this case requires submission of the negligence issue to the jury.

JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED.

COSTS TO BE PAID BY APPELLANT.