837 A.2d 981

Henry REHN

v.

WESTFIELD AMERICA, et al.

No. 1630, Sept. Term, 2002.

Court of Special Appeals of Maryland.

Dec. 8, 2003.

Alan H. Legum (Kathleen Duckett McCann, Alan Hilliard Legum, P.A., on brief), Annapolis, for appellant.

D'Ana E. Johnson (Katherine A. Berman, Bonner, Kiernan, Trebach & Crociata, on brief), Washington, DC, Kevin M. Soper (Moore & Jackson, LLC, on brief), Towson, for appellee.

Argued before MURPHY, C.J., and ADKINS and SHARER, JJ.

ADKINS, J.

In this slip and fall case, plaintiff-appellant Henry Rehn asks us to reverse summary judgments in favor of defendants-appellees Mike Edmonds d/b/a Chick–fil–A (Chick Fil–A), Westfield America (Westfield), and Interstate Cleaning Corporation (ICC). Rehn broke his hip when he slipped on spilled soda near the service counter of the Chick–fil–A located in the Annapolis Mall food court. Westfield was responsible for maintaining the area where Rehn fell, and contracted with ICC for those maintenance services.

Rehn presents two questions for our review, which we have rephrased as follows:

I. Did the circuit court err in determining that Chick–fil–A did not have a duty to clean up or warn Rehn about the spill?

II. Did the circuit court err in determining that none of the defendants breached their duties of care to Rehn?

We agree that there was no material factual dispute on the second question of whether these defendants breached their duties to Rehn. Consequently, we shall affirm the judgments without addressing the first duty issue with respect to Chick–fil–A.

## FACTS AND LEGAL PROCEEDINGS

All three defendants moved for summary judgment on the basis of undisputed facts that came out during discovery.

On May 8, 1999, Henry Rehn and a friend went to the Annapolis Mall. At approximately 10:30 a.m., they decided to get something to eat at Chick–fil–A. They walked through the food court to Chick–fil–A, where Rehn purchased a sandwich and a drink at the counter. Rehn then "took a small step and slipped" on soda and ice that a Chick–fil–A customer had just spilled. The wet floor was not marked and Rehn did not

see the spill before he fell. Rehn's right hip fractured, requiring surgery.

Chick–fil–A employee Theresa DeChamps, who had been employed for seven and a half years at this location, was working the counter that morning. At her deposition, she testified that when there was a spill on the floor outside the counter area, the Chick–fil–A employees routinely called customer service at Westfield, and "they would in turn call [ICC] maintenance" on their beepers. It was her understanding that spills "on the other side of the counter, that was not our responsibility." ICC maintenance workers were the ones who "usually" put up yellow warning signs "when there's a spill." DeChamps also related what happened before Rehn's fall. She had just waited on a customer who had carried her take-out order, including three or four Cokes in a cup carrier, away from the counter. The customer headed for the food court exit, and DeChamps began to do something else. Shortly after leaving the counter, the customer apparently spilled her drinks. DeChamps did not see the spill occur. But the customer came back to the counter and told DeChamps, " 'I spilled my drinks[.]' " DeChamps looked out and saw a large brown spill not far from the service counter.

DeChamps explained that she immediately told another employee to notify Westfield of the spill.

DeChamps: So I, in the process, turned around. My station is right there by where the swinging door is, and I believe there was one other person out in,[sic] behind the registers.

And, our rule is not to leave anyone out there by themselves, so I opened the door, hollered back there, "Someone call for a spill," and just as I said that, I said, "Also call security," and they said, "Why?" I said, "Cause someone has fallen."

Q: Did you see the gentleman fall?

A: No, I did not....

Q: So you didn't see the spill and you didn't see the fall, but you saw everything before and after each event, right?

. . .

A: Yes.

DeChamps was questioned also about a statement she gave to an investigator. The statement said: "According to Ms. DeChamps, she did not have an opportunity to call maintenance and the spill was on the floor surface for less than four minutes." When asked whether she "agree[d] that the spill was on the floor surface for less than four minutes[,]" De-Champs replied, "Yes."

The lease between Chick–fil–A provided that Westfield would maintain the area of the food park where Rehn fell. Westfield hired ICC to perform its maintenance duties. When Chick–fil–A received information about a spill, it contacted Westfield, who in turn radioed ICC employees stationed in the food park area to clean it up and place "wet floor" warning stanchions over the wet floor. ICC employees also patrolled the food court and cleaned up spills that they found or were notified about. Although an ICC worker was on duty in the food court area when the spill and fall occurred, there was no evidence that he saw the wet floor on which Rehn fell. An ICC employee testified in deposition that yellow "wet floor" stanchions are placed around the food park trash cans for anyone to put out when needed.

All three defendants moved for summary judgment on the basis of this evidence. Westfield and ICC asserted *inter alia* that they did not breach their respective duties to Rehn because neither had actual notice of the spill and the spill had not been on the floor long enough that they reasonably could have been expected to discover it in the course of patrolling the food court area. Chick–fil–A argued that even though it had notice of the spill, it had no duty to clean it up and, in any event, it did not have enough time to do so.

In a written opinion and order, the circuit court noted DeChamps' undisputed testimony that as soon as the customer reported the spill, she "turned around to face a door behind

her in the back of the business, calling to another employee to notify the mall customer service about the spill with the understanding that they would alert the cleaning crew assigned to that area." The court concluded that "Chick–fil–A did not have a duty to maintain the food court area and owed no duty to [Rehn] under these circumstances." In addition, the court held that none of the defendants had breached their duties to Rehn. Rehn noted this appeal.

## DISCUSSION

"In reviewing the circuit court's grant of summary judgment, we evaluate 'the same material from the record and decide[ ] the same legal issues as the circuit court.' " *Berringer v. Steele,* 133 Md.App. 442, 470, 758 A.2d 574 (2000) (citations omitted). A party opposing summary judgment must offer admissible evidence to show that there is a dispute of material fact justifying denial of the motion. *See Tennant v. Shoppers Food Warehouse Md. Corp.,* 115 Md.App. 381, 386, 693 A.2d 370 (1997). "A party cannot establish the existence of a dispute merely by making formal denials or general allegations of disputed facts." *Id.* at 386–87, 693 A.2d 370.

Here, we ask whether the circuit court correctly concluded that the summary judgment record established that none of these three defendants breached their respective duties of care to Rehn.

In Maryland, it is well-established premises liability law that the duty of care that is owed by the owner of property to one who enters on the property depends upon the entrant's legal status. Ordinarily, one entering onto the property of another will occupy the status of invitee, licensee by invitation, bare licensee, or trespasser. "An invitee is a person 'on the property for a purpose related to the possessor's business.' " He is owed a duty of ordinary care to keep the property safe.

*Rivas v. Oxon Hill Joint Venture*, 130 Md.App. 101, 109, 744 A.2d 1076, *cert. denied*, 358 Md. 610, 751 A.2d 471 (2000) (citations omitted).

Nevertheless, "[s]torekeepers are not insurers of their customers' safety, and no presumption of negligence arises merely because an injury was sustained on a storekeeper's premises." *Giant Food, Inc. v. Mitchell*, 334 Md. 633, 636, 640 A.2d 1134 (1994). "The burden is upon the customer to show that the proprietor ... had actual or constructive knowledge" that the dangerous condition existed. *Moulden v. Greenbelt Consumer Servs., Inc.*, 239 Md. 229, 232, 210 A.2d 724 (1965); *see Tennant*, 115 Md.App. at 389, 693 A.2d 370. When another patron creates the danger, the proprietor may be liable if it has actual notice and sufficient opportunity to either correct the problem or warn its other customers about it. *See Rawls v. Hochschild, Kohn & Co.*, 207 Md. 113, 117–18, 113 A.2d 405 (1955); *Tennant*, 115 Md.App. at 389, 693 A.2d 370. The evidence must show not only that a dangerous condition existed, but also that the proprietor "had actual or constructive knowledge of it, and that that knowledge was gained in sufficient time to give the owner the opportunity to remove it or to warn the invitee." *Keene v. Arlan's Dep't Store of Baltimore, Inc.*, 35 Md.App. 250, 256, 370 A.2d 124 (1977). Whether there has been sufficient time for a business proprietor to discover, cure, or clean up a dangerous condition depends on the circumstances surrounding the fall. *See Deering Woods Condo. Ass'n v. Spoon*, 377 Md. 250, 833 A.2d 17, 2003 Md. LEXIS 691, *18 (filed Oct. 6, 2003). " 'What will amount to sufficient time depends upon the circumstances of the particular case, and involves consideration of the nature of the danger, the number of persons likely to be affected by it, the diligence required to discover or prevent it, opportunities and means of knowledge, the foresight which a person of ordinary care and prudence would be expected to exercise under the circumstances, and the foreseeable consequences of the conditions.' " *Id.* (quoting *Moore v. Am. Stores Co.*, 169 Md. 541, 551, 182 A. 436 (1936)).

## I.

### Chick–fil–A

The court concluded that Chick–fil–A did not breach any duty that it may have had to keep the area outside its service counter safe for its customers, or to warn them of dangerous conditions there, because

> the length of time that elapsed between the creation of the condition (the spilled soda) and the discovery of that condition by those owing a duty to [Rehn] was a matter of moments. The exact time is unknown, but it appears from the testimony of Theresa DeChamps (and from the proximity of the spill to the restaurant counter) that the spill occurred just after the soda's purchase, and the customer causing the spill was able to alert Ms. DeChamps soon after. [Rehn's] encounter with the spill immediately followed. During her deposition, Ms. DeChamps affirmed that the spill was on the floor for "less than four minutes." How much less? By Ms. DeChamps' description, it may be inferred that the time elapsed even could be better measured in seconds. . . .
>
> In this case, the soda was not on the floor long enough for Chick–fil–A's employees to find it and take action to prevent it from causing an accident; it was there only momentarily. When Chick–fil–A's employees discovered the spill, steps were taken promptly to correct the problem; [Rehn] encountered it almost simultaneously with those efforts. Therefore, this court finds that no reasonable fact finder could determine, on these undisputed material facts, that Defendant Chick–fil–A's agents were not exercising reasonable care.

In its brief, Rehn argues that "[s]ince Ms. DeChamps was aware of the spill prior to Mr. Rehn's fall, a jury would find that Chick–fil–A had actual notice of the dangerous condition prior to the accident." We agree that Chick–fil–A had actual notice. But such notice, by itself, did not preclude summary judgment, because the dispositive issue here was not whether Chick–fil–A's employee knew about the spill, but rather, how

long she knew about it before she did something about it. In practical terms, did DeChamps have enough time after she learned about the spill to do something that ultimately might have prevented Rehn's fall?

We agree with the circuit court that there is no evidence in the summary judgment record from which a jury reasonably could infer that she had enough time to do so. DeChamps' testimony was undisputed that as soon as the customer pointed out the spill, she looked out and saw it for the first time, then "opened the door" next to her station and "hollered back there, 'Someone call for a spill[.]'" It was while she was "in the act" of notifying her co-worker that Rehn fell.

Rehn argues that DeChamps or any other Chick–fil–A employee could and should have taken other steps to prevent the accident, including putting out a "wet floor" stanchion or guarding the spill until someone cleaned it up. The argument does not address the central reason underlying the circuit court's decision to grant summary judgment—that there was not enough time to do those things. Rehn's silence on this critical factual question does not distract us from this dispositive issue. We see nothing in the summary judgment record from which a juror reasonably could infer that Chick–fil–A acted unreasonably when it learned about the spill.

First, we do not read DeChamps' affirmation that the spill was on the floor for "less than four minutes" as evidence generating a material dispute as to whether there was enough time to clean up or warn Rehn about the spill. This time frame originated from an investigator's summary of DeChamps' statement long after the accident. In her deposition testimony, DeChamps confirmed only that the spill occurred "less than four minutes" before the fall, but, as the circuit court observed, she did not say "how much less" time had elapsed. Notably, DeChamps was not asked to estimate the interval between when the customer told her about the spill and when Rehn fell. The only evidence on that point, as the court pointed out, was DeChamp's testimony that the interval between the customer telling her about the spill and Rehn

falling was just long enough for DeChamps to begin the process of notifying Westfield and ICC about it. We agree with the circuit court that a finding that this interval was long enough for DeChamps or another Chick–fil–A employee to either clean up the spill or warn food park patrons about it would be premised solely upon impermissible speculation and conjecture.[1]

We recognize that there is no reported Maryland precedent affirming summary judgment for a business proprietor on the ground that, although the proprietor did have actual knowledge of the hazard, it did not have enough time to warn patrons. The cases cited in appellees' briefs are distinguishable from this case because there was no evidence in those cases that the business proprietor actually knew about the dangerous condition. *See Moulden,* 239 Md. at 233, 210 A.2d 724 (summary judgment was appropriate because there was no evidence that grocery had notice of string bean that caused plaintiff to slip and fall); *Lexington Mkt. Auth. v. Zappala,* 233 Md. 444, 446, 197 A.2d 147 (1964)(JNOV was appropriate because there was no evidence that parking garage had notice of oil or grease from patron's vehicle that caused plaintiff to slip and fall); *Carter v. Shoppers Food Warehouse MD Corp.,* 126 Md.App. 147, 164, 727 A.2d 958 (1999) (summary judgment was appropriate because there was nothing but plaintiff's conjecture that she may have fallen on upturned carpet and no evidence that grocery had notice of that condition); *cf. also Lusby v. Baltimore Transit Co.,* 195 Md. 118, 122, 72 A.2d 754 (1950)(judgment was appropriate because there was no evidence that bus driver had notice of wet foreign substance that caused plaintiff to slip and fall on bus); *Burwell v. Easton*

---

1. We are not persuaded otherwise by Rehn's proffered evidence that Chik–fil–A employees occasionally served food samples in the food court area. We recognize that such a presence might be evidence from which a reasonable juror could infer that Chick–fil–A had notice of the spill prior to the time that its customer told DeChamps that she had spilled her drinks, and therefore, that Chick–fil–A had more time to respond than the brief moment described by DeChamps. But there was no evidence whatsoever that any of Chik–fil–A's "food sample" employees were in the food court at the time Rehn fell.

*Mem'l Hosp.*, 83 Md.App. 684, 687–89, 577 A.2d 394 (1990)(summary judgment was appropriate because there was no evidence that hospital had notice of lettuce leaf that caused plaintiff to slip and fall on stairs). Other cases involve conditions in which the proprietor had actual or constructive notice because it created the hazard. *See, e.g., Mondawmin Corp. v. Kres*, 258 Md. 307, 318, 266 A.2d 8 (1970)(evidence that mall's fountain sprayed water on stairwell supported verdict for shopper who slipped and fell on wet stairs); *Tennant*, 115 Md.App. at 394–95, 693 A.2d 370 (evidence that cabbage leaves were swept into a neat circular pile and that produce box protruded from beneath display bin raised inference that store created the hazards that caused plaintiff to slip, trip, and fall).

In cases discussing whether there was sufficient time for business proprietor to clean up the hazard or warn customers, the proprietors have not had actual knowledge of the hazard; that focus on "time frame" in these cases, therefore, has been on whether there was enough time to both discover **and** redress the danger. *See, e.g., Rawls*, 207 Md. at 123, 113 A.2d 405 (rainy day customer who slipped and fell on wet stairs as she entered at beginning of shopping day was not entitled to judgment because she offered no evidence to show how the water got on steps or how long it had been there); *see generally* Sonja A. Soehnel, *Liability of Operator of Grocery Store to Invitee Slipping on Spilled Liquid or SemiLiquid Substance*, 24 A.L.R.4th 646 (1983 & 2003 update)(collecting cases).

Because the business proprietor in this case undisputedly had actual knowledge of the danger to its patrons, we focus solely on whether there was enough time, after DeChamps learned about the spill, for Chick–fil–A to clean it up or warn its customers. The only reported Maryland case addressing whether a proprietor had sufficient time to cure a known hazard or to warn its patron "goes the other way," but provides what we think is an instructive contrast.

In *Keene v. Arlan's Dep't Store of Baltimore, Inc.*, 35 Md.App. 250, 251–52, 370 A.2d 124 (1977), a department store

customer slipped and fell on a "clear, sleek solution" as she approached the checkout line in which her husband had been waiting for approximately 15 minutes. A cashier who had been stationed in sight of the husband the entire time he had been waiting in line "blurt[ed] out, 'I told them if this wasn't cleaned up, someone's going to fall.'" *Id.* at 252, 370 A.2d 124. We held that the trial court erred in directing a verdict in favor of the store because a jury reasonably could conclude from this evidence that the store had actual notice of the dangerous condition and sufficient time to either clean it up or warn customers about it. *See id.* at 258–59, 370 A.2d 124.

In Rehn's case, however, there was no comparable evidence that there was enough time to clean up or warn about the spilled drink. The "15 minutes or more" time frame during which the proprietor in *Keene* had notice of a clear wet liquid on a floor within its store, but did nothing, stands in marked contrast to the "less than four minutes" during which Chick–fil–A's employee learned about the dark brown soda on the floor outside its store and began the process of having it cleaned up. Both the length and the certainty of the time frame in *Keene* created a jury question. In contrast, the period during which Chick–fil–A had notice of the spilled drinks was brief but uncertain.

To conclude that Chick–fil–A breached a duty to Rehn, the jury would have to speculate regarding how long Chick–fil–A actually knew about the spilled drinks and how long it reasonably would take to respond. Such conjecture is not a permissible evidentiary basis to infer that such a temporary, non-recurring hazard created by a third party just outside Chick–fil–A's business premises existed for a sufficient length of time to give Chick–fil–A a reasonable opportunity to respond. *See generally Moulden*, 239 Md. at 232, 210 A.2d 724 ("A mere surmise that there may have been negligence will not justify the court in permitting the case to go to the jury"); *cf. Harrington v. Kroger Co.*, 279 So.2d 814, 815 (La.Ct.App. 1973)(no reasonable opportunity to clean up spill when grocery employee "heard [a] bottle drop, called on the intercom for a

porter to clean it up, and saw [the victim] fall—all within a matter of seconds").

## II.

### Westfield And Interstate

 The circuit court concluded that, because neither Westfield nor Interstate "receive[d] actual notice of the spill until after [Rehn] fell[,]" and there was no evidence that any of the janitorial staff assigned to monitor the food court were absent from their assigned posts or otherwise "not acting with reasonable diligence[,]" both defendants were entitled to summary judgment. "It would be unreasonable to expect the custodial staff to keep the food court area continuously clean and absolutely free from obstacles."

Rehn concedes in his brief that "[t]here is . . . no evidence to indicate that the Defendants Westfield or [ICC] had actual notice of the dangerous condition." He ;advances only a "constructive notice" argument against these defendants. Rehn argues that the circuit court "erred when it found, as a matter of law, that 'less than four minutes' was insufficient time to give Westfield, through [ICC's] janitorial staff, an opportunity to discover the spill and either warn Rehn of its existence or clean it up." We disagree.

In *Zappala*, 233 Md. at 446, 197 A.2d 147, the Court of Appeals rejected the notion that a commercial business has a duty to correct or warn against a slippery condition created by a customer "as soon as it occurs[.]" A patron of a self-service parking service garage slipped on oil or grease. The Court reversed a jury verdict in favor of the patron. "[E]ven if we assume that periodic inspections are necessary," business proprietors do not breach their duty of care by failing to instantaneously detect and correct those conditions. *See id.* at 445, 197 A.2d 147. "[I]t would be unreasonable to hold that it is [their] duty to continuously inspect and sand down any and all leakage as soon as it occurs[.]" *Id.*

Here, the only evidence regarding the amount of time the spill was on the floor was DeChamps' testimony confirming that it was "less than four minutes." Rehn argues that "[a] reasonable jury could find that Defendants Westfield and [ICC], in the course of carrying out their assigned duties to monitor the area and watch for hazards, and by the exercise of due diligence, should have discovered such a large spill prior to the Plaintiff falling in it." [2] We disagree that such equivocal testimony could form the basis for a jury verdict against Westfield and ICC.

Even assuming that the interval between the spill and the fall was "less than four minutes," as the circuit court pointed out, DeChamps did not know or estimate precisely how much less time elapsed. She testified that she did not see the spill, and, in doing so, left to pure speculation whether that interval could be measured at a full three minutes and fifty-nine seconds or only "a matter of seconds[.]"

We cannot say that any reasonable juror could rely on such equivocal testimony to find that Rehn had met his burden of proving that these defendants had enough time to discover and either clean up or warn about the spill. We agree with the circuit court that such conjecture cannot serve as grounds for holding Westfield and ICC liable. *See Moulden*, 239 Md. at 233, 210 A.2d 724 (because string bean on which grocery patron slipped "may have fallen from a grocery cart a few moments before she walked up the aisle[,]" there was no evidence of constructive notice); *Zappala*, 233 Md. at 446, 197 A.2d 147 (because oil or grease on which garage patron slipped "may have leaked from a car occupying the space beside her car, only a few moments before she returned[,]"

---

2. In support, Rehn cites only a decision of the Fourth Circuit Court of Appeals. *See Konka v. Wal–Mart Stores, Inc.*, 133 F.3d 915 (4th Cir.1998)(reported in full text at 1998 U.S.App. LEXIS 1093)(customer slipped on wet tile floor at open doors to garden center entrance on rainy day; evidence was sufficient to show store either caused the slippery condition or knew about it). Even if we were to give persuasive value to that decision, it would not help Rehn given the distinguishing factual circumstances in that case. *See id.*

evidence was insufficient to establish constructive notice); *Carter,* 126 Md.App. at 164, 727 A.2d 958 (because only evidence as to why grocery patron fell was her conjecture that she tripped on upturned carpet, and there was no evidence regarding "the length of time it was turned up[,]" evidence was insufficient to establish constructive notice or to preclude summary judgment).

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**